ROBERT THUNER v. CHARLES E. KANTER.

| 102 | 59 |
|-----|-----|
| 110 | 701 |
| 102 | 59 |
| 119 | 237 |

*Real-estate broker—Commission—Procuring cause—Evidence.*

1. Where, in a suit to recover a commission on a sale of real estate, neither the pleadings nor plaintiff's version of the contract of employment leave the case open for any claim under the *quantum meruit*, it is not error to exclude testimony as to expenditures made by the plaintiff in advertising.[1]

2. Where, in a suit to recover a commission on a sale of real estate, the pleadings limit the issue to the question whether the plaintiff did in fact procure a purchaser, either at the price stated in the declaration or at a price satisfactory to the defendant, and the undisputed testimony shows that plaintiff did not bring the purchaser and the defendant together, and that the purchaser was not a customer of plaintiff, and did not acquire his knowledge that the property was for sale from him, directly or indirectly, a verdict is properly directed in favor of the defendant.

[1] See *Montross v. Eddy*, 94 Mich. 100; *McDonald v. Ortman*, 98 Id. 40.

Error to Wayne. (Reilly, J.) Submitted on briefs June 26, 1894. Decided September 25, 1894.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*William J. Gray,* for appellant

*Ed. E. Kane,* for defendant.

MONTGOMERY, J. Plaintiff sued to recover a commission on a sale of real estate. The circuit judge directed a verdict for the defendant, and plaintiff brings error, alleging that the circuit judge committed error—First, in excluding testimony of plaintiff as to how much money he had expended in advertising the property; second, in admitting testimony of defendant that he had placed the property in the hands of other brokers; third, in directing a verdict for the defendant.

1. It was not error to exclude testimony as to expenditures made by plaintiff in advertising. Neither the pleadings, nor the plaintiff's version of the contract of employment, left the case open for any claim under the *quantum meruit.*

2. While we think the testimony of the defendant as to his having placed the property in the hands of other brokers immaterial, it is apparent that the error in the admission of such testimony resulted in no injury to the plaintiff, if the court was right in holding that there was no case made for the jury.

3. The only question which requires extended discussion is whether the circuit judge should have submitted the case to the jury.

The declaration contained three special counts. In the first it was alleged in substance that defendant employed plaintiff as broker to effect, on behalf of said defendant,

a sale of the premises in question, and agreed to pay to the plaintiff a commission of $1,000 in case he (the plaintiff) would, within a reasonable time, procure a purchaser at the price of $20,000; that the plaintiff agreed to use his best efforts to effect such a sale, and, with the knowledge of· the defendant, negotiated with several parties in regard thereto; that within a reasonable time after the making of said contract, through the efforts of said plaintiff, said property was brought to the attention of Frank A. Osborn; that said Osborn and the defendant, being thus brought together through the plaintiff, negotiated with respect to said property, and that pending the negotiations said plaintiff notified defendant that said Osborn had been procured as a possible purchaser by said plaintiff, and that said Osborn was desirous of purchasing said premises, but was unwilling to pay so high a price as $20,000; that said defendant then, in willful disregard of plaintiff's rights in the premises, did agree to sell said premises to said Osborn at a price named which was less than $20,000, and that said Osborn agreed to purchase the same at such price. The plaintiff further averred that by reason of the premises, and the lowering of said price, under the circumstances, the defendant became indebted to the plaintiff in the sum of $1,000.

The second count averred that defendant employed plaintiff at the agreed price of $1,000 to furnish a purchaser at a price satisfactory to defendant, and alleged that the purchaser and defendant were brought together by plaintiff's efforts, and a sale at a price satisfactory to defendant was made, and claimed the agreed compensation.

The third count was the same in substance as the second, except that it averred that plaintiff's employment was at a reasonable commission.

There were appended the common counts, and a bill of

particulars was filed, which limited plaintiff's claim to one " for services in procuring a purchaser for stores No. 420 to 428, Michigan avenue, $1,000."

Under the state of the pleadings, we think the only question for trial was whether the plaintiff did in fact procure a purchaser, either at $20,000 or at a price satisfactory to the defendant. Each count avers that the purchaser was procured by the plaintiff, and there is no averment of any special damage for withdrawing the property from plaintiff's hands, except as it is averred that plaintiff produced Osborn as a purchaser, and that defendant availed himself of plaintiff's efforts. There is no averment in the first count of the declaration that the plaintiff was to have the exclusive sale of the property, and the plaintiff's own testimony shows that defendant was authorized to sell if he should himself get a purchaser for the property. This count alleges that defendant's wrong consisted in selling to a customer with whom plaintiff himself was at the time in negotiation. But this averment of the declaration is refuted by the undisputed testimony in the case. The plaintiff testified that defendant agreed to place the property in plaintiff's hands, fixed his price at $20,000, and agreed that if plaintiff succeeded in selling at $20,000 he was to have $1,000 commission for the sale; that defendant agreed to place the property in his hands exclusively and absolutely, with the reservation that, if he himself succeeded in finding a purchaser, he (defendant) would first notify plaintiff to bring in any customer that he had, before withdrawing the property. Plaintiff also testified that he agreed to use his best efforts; that he entered into negotiations with one Fyfe for a sale of the property, and that Fyfe, after considering the matter, declined to buy, but referred him to his partner, Mark B. Stevens, and introduced him to him as a possible purchaser; that Stevens looked into the matter, and stated

that if he bought he preferred to do so through his nephew, one George B. Stevens, who was in the real-estate business, and that he (plaintiff) finally agreed with Mark B. Stevens that in case he should become a purchaser he would divide commissions with George B. Stevens; that Mark B. Stevens never agreed to buy the property of him, but it was left in that way; that, a short time before the sale to Osborn was consummated, defendant told the plaintiff that George B. Stevens had brought Mr. Osborn to look at the property, and that he (plaintiff) then told the defendant that, if the property was sold to anybody connected with Mr. Stevens or with Mr. Fyfe (referring to Mark B. Stevens), he (the plaintiff) would claim his commission. The plaintiff also called the purchaser, Osborn, who testified that he purchased the property from defendant through George B. Stevens, paying $19,300; that he first learned of the property through Mark B. Stevens, but that his negotiations were with George B. Stevens; that he had no acquaintance with the plaintiff, and that he had never heard of him until after the purchase. Mark B. Stevens testified that he had, before the purchase by Osborn, given up the thought of purchasing the property, and communicated the fact to George B. Stevens, and it would seem that after this conclusion George B. Stevens negotiated the sale with Osborn. George B. Stevens, who was called for the defendant, testified that after the talk between Mark B. Stevens and plaintiff, and while Mark B. was still negotiating with a view of purchasing, he (George B. Stevens) went to see defendant, and the defendant distinctly refused to negotiate with him when he learned that his customer was Mark B. Stevens; that subsequently Mark B. Stevens said he should not buy, and told witness that possibly Osborn would take it; that thereafter he opened negotiations with Osborn, and the sale was finally effected.

We think the circuit judge was right in holding that the undisputed testimony showed that plaintiff did not bring Osborn and defendant together. Osborn did not acquire his knowledge that the property was for sale from the plaintiff, directly or indirectly; but it seems that Mark B. Stevens, having the interests of his nephew in view, suggested that he (the nephew) look up a customer, which he did. The defendant refused to sell either to Fyfe or Mark B. Stevens, except through the plaintiff, as he recognized the plaintiff's claim that he had negotiated with them. But no such claim was made as to Osborn. Confining our holding to the distinct question made by the pleadings and passed upon by the trial judge, namely, whether the plaintiff showed that Osborn, the purchaser, was a customer procured by him, we think the circuit judge's ruling in the negative was correct.

The judgment will be affirmed, with costs.

The other Justices concurred.