VEATCH, Respondent, v. NORMAN, Appellant.

St. Louis Court of Appeals, December 27, 1904.

1. PRACTICE: Pleading Express Contract: Quantum Meruit. Where plaintiff, a broker, in suing for commissions on a sale of land, counted upon a special contract, he could not recover upon *quantum meruit*.

2. ———: ———: ———. Where plaintiff, in such case, alleged that the defendant agreed to pay him a specific sum for selling 5,480 acres of land and the proof showed that plaintiff procured a purchaser who actually bought only 4,800 acres of land, plaintiff could not recover.

3. INSTRUCTIONS: Variance. Instructions which present to the jury issues not included in the pleadings are erroneous.

Appeal from St. Louis City Circuit Court.—*Hon. R. M. Foster,* Judge.

REVERSED AND REMANDED.

*William H. Miller* and *James F. Green* for appellant.

(1) Before a broker can recover compensation for effecting a sale of property, he must show that he found and procured a purchaser who was willing and able to purchase the property upon the exact terms proposed by his principal. Waren v. Cram, 71 Mo. App. 640; Yoder v. White, 75 Mo. App. 155; Tooker v. Duckworth, 80 S. W. Rep. 963; McDonnell v. Stephenson, 77 S. W. 766; Reiger v. Reiger, 29 Mo. App. 421; Blackwell v. Adams, 28 Mo. App. 61; Stinde v. Blesh, 42 Mo. App. 478; Hackman v. Gutweiler, 66 Mo. App. 244; Hayden v. Grillo, 26 Mo. App. 289; Cox v. Bowling, 54 Mo. App. 289. (2) Plaintiff sues upon a written contract, alleging performance thereof, and he must recover upon the contract or not at all, and where the testimony shows a failure to comply with the contract as pleaded, there can be no recovery. Cole v. Armour, 154 Mo. 351, 55 S. W. 476; Lumber Co. v. Snyder, 65 Mo. App. 468; Eyerman v. Cemetery Assn., 61 Mo. 489; Huston v. Tyler, 140 Mo. 252, 36 S. W. 654, 41 S. W. 795; Clements v. Yates, 69 Mo. 625; Furth v. Anderson, 37 Mo. 354; Veatch v. Norman, 95 Mo. App. 500, 69 S. W. 472.

*F. W. Imsiepen* and *S. S. Merrill* for respondent.

(1) A broker is entitled to the compensation agreed upon under his contract with his principal if he is the procuring cause of the negotiations which resulted in the sale, even though the negotiations are conducted and concluded by the principal in person. Grether v. McCormack, 79 Mo. App. 325; Bell v. Kaiser, 50 Mo.

15; Tyler v. Parr, 52 Mo. 249; Timberman v. Craddock, 70 Mo. 638; Gellatt v. Ridge, 117 Mo. 553, 23 S. W. 882; Blackwell v. Adams, 28 Mo. App. 393; Jones v. Berry, 37 Mo. App. 125; Bass v. Jacobs, 63 Mo. App. 393; (2) The designation by a principal to his agent, of the quantity and quality of the subject-matter of the agency, fixes the standard of value, and is a part of the *res gestae,* and such designation authorizes the agent to warrant the quantity, quality and conditions of the article sold. Palmer v. Hatch, 46 Mo. 585; Samuel v. Barker, 53 Mo. App. 587; Andrews v. Kneeland, 6 Cowen 354; Story on Agency, secs. 102, 339; Anson, Contracts of Agency (1887), star pp. 321, 424. (3) A broker, when he agrees to sell the articles described to him, by his principal, agrees on the assumption that the articles are there. Clifford v. Watts, L. R., 5 C. P. 577.

REYBURN, J.—The plaintiff declared upon an express contract in form following:

"Plaintiff states that on the fourth day of January, 1900, defendant made a written proposal to plaintiff herewith filed, marked 'Exhibit 3' to pay him $980 if he secured a purchaser at $5 per acre for defendant on the timber rights in certain timber lands of about 5,480 acres, lying in townships 24 and 25 north, range 14 and 15 east, in New Madrid county, Missouri, the property of the defendant, said lands being referred to in said proposal, as described in a plat and letter received by plaintiff of defendant dated December 26, 1899, and the timber on said lands being described by defendant in said letter as yielding timber per acre as follows, viz.: 4,000 feet of white oak, 1,000 feet of ash and hickory, 3,000 feet of gum and elm. Copy of said plat, with said letter, is herewith filed, marked 'Exhibit 4,' the original plat being in the possession of defendant. That thereupon, plaintiff relying upon defendant's said representations, accepted said proposal by his letter mailed and addressed to defendant at his residence, postage pre-

paid, which written acceptance was duly received by de-
fendant on or about January 8, 1900, and that thereup-
on plaintiff procured a buyer for defendant's said tim-
ber rights on said lands, or the oak timber on said lands,
in the person of the Pioneer Cooperage Company, and
notified defendant of the name of said buyer on or about
the sixth day of January, 1900, and that thereupon, on
or about the twenty-fourth day of March, 1900, defend-
ant sold to said Pioneer Cooperage Company the right
to remove the oak timber from said tract of 5,480 acres
of land described in said plat and letter of December
26, 1899, or the right to remove the oak timber from so
many acres of land contained in said plat of 5,480 acres
as contained oak timber, being from 3,840 to 4,520 acres
in area, at the price of $19,000; that the unsold portion
of the 5,480 acres aforesaid was not purchased by said
Pioneer Cooperage Company for the sole reason that it
did not contain the oak timber as represented to plain-
tiff by defendant in his said letter of December 26, 1899;
that plaintiff did on the —— day of March, 1900, after
said sale, make demand of defendant,'' etc.

The case went to trial on general denial as defense
and a jury returned a verdict for the amount sought.
The testimony at the retrial did not materially differ
from that elicited and preserved in the former trial and
record on the earlier journey of the case to this court
(95 Mo. App. 500). The plaintiff based his cause of
action upon a contract in writing, the full performance
of which he alleged on his part, but the proof introduced
by him at this trial was substantially to the following
effect. Learning in the close of the year 1899, that de-
fendant had timber lands in the market for sale he ad-
dressed a letter of inquiry which evoked the following
reply:

            ''Cape Girardeau, Mo., Dec. 26, 1899.
''Mr. C. A. Veatch,
        ''St. Louis, Mo.
    ''Dear Sir: Replying to your favor of the 23rd

inst., I own a body of good wagon oak, 5,480 acres, near Henderson Mounds on the Cotton Belt Railroad. It will cut 4,000 feet white oak, 1,000 feet ash and hickory, 3,000 feet gum and elm per acre, but I have just about sold this timber. I am offered $5 per acre for it, and as I bought it very low and am making a good profit, I have written the party that I would take the $5 but it is worth more money. If you are looking for wagon stock you ought to have this tract of timber, but probably it is more than you want. If you want a body of wagon timber, write me just what you want and I will hunt it up for you. Tell me what you would like for it to cut per acre and about what you would be willing to pay for it per thousand in the tree. Of course I know you want to buy as cheap as you can, but you will have to pay for good wagon timber, as it is getting scarce, but I know of some good tracts besides the 5,480 that I own. I wish I had got your letter sooner. I was in St. Louis all last week. I would have went to see you and could have found out just what you want.

"I enclose you a plat of this timber of mine, but you must return it at once. Now, don't forget it. I have no blanks at present or I could soon make another.

"Yours truly,

(Signed)      "W. W. Norman."

The plat accompanying this letter was duplicated by plaintiff and then returned with letter of about December 27th, in answer to which the defendant wrote:

"Dear Sir: I have your letter of December 28 with plat returned as requested. The timber marked in blue is some I bought early in the summer, and I hold that at $3.50; the other I just recently bought. This last I got will cut 10,000 feet white oak to the acre. It is the finest lot of timber I ever saw. After I got this I took the 3,720 acres off the market and expected to work the 5,480 acres of timber myself, so I got a letter from this party at Stanley, Mo., offering me $5 per acre, and I

have written him that I would take it, so he may take it.
If he does not take it I will keep it and work it off my-
self. I might hunt the swamps over and I could not
find another body of timber as good for the money.
Now, if I don't sell this I might cut some lumber for
this wagon concern you speak of, but I do not want any
partnership business with any concern. I have nothing
else to offer, but if I find anything I will let you know.
Of course, I understand that you are wanting white oak
for wagon stock or cooperage stock, and I tell you
right now it is hard to find, but I will try to get you up
a body of it."

In response to this last, plaintiff inquired by re-
turn letter what commission defendant was willing to
pay and was answered thus:

"Dear Sir: This tract of mine would suit a coop-
erage company all right, but I could not allow you much
commission, but if the Stanley people does not take it
I will allow you $980 to make the deal at $5 per acre
for the entire tract of 5,480 acres. I have given the
Stanley people until the 10th to decide and look over it,
so if this proposition suits you let me know and I will
notify you as soon as the time is out. I would be more
liberal with you, but I bought this timber to cut myself
and am hurrying to get done here so I can move on it.
If I sell this lot, I know where I can buy another lot,
but I would not want to buy this lot unless I sold the
one I had first."

Plaintiff testified that he wrote subsequently to de-
fendant that $980 appeared in his judgment small com-
pensation, in view of the amount of timber and the
price asked, but by a subsequent letter he accepted the
rate offered, and advised defendant he would consum-
mate the transaction. Plaintiff further testified that
he submitted defendant's land to the Pioneer Cooperage
Company, such negotiations beginning in January,
1900, advertised it in the St. Louis newspapers, and
further correspondence was exchanged between himself

and defendant on the subject, two of such letters being as follows:

"St. Louis, Mo., Jan. 5, 1900.

"Dear Sir: Yours of the fourth to hand and contents noted. If the timber is down on that land, as you say, I think I can land a cooperage company on that tract at the price of $5 per acre, but Mr. Norman, at that price you can afford to pay the customary commission of 5 per cent. Being a cash deal, is a very small commission. You see it is just as hard to find buyers as it is to find good oak tracts, and cash is a very great item. I think you will agree with me that the 5 per cent commission is small enough. As soon as the Stanley people decide not to take it, let me know and I'll have my party go examine same. Let me hear from you."

"Jan. 27, 1900.

"Dear Sir: I have been expecting to hear from you any day regarding the 5,480 acres, whether or not you had sold it. Now, regarding the commission: You stated in your last letter that the 5 per cent commission was satisfactory, providing I was not dealing with the Pioneer Cooperage Company, as you knew Mr. Brown personally. I know Mr. Brown; have, presented him with a good deal of timber, and I don't see what you knowing him personally has to do with it if I should present him with the property before you did. I have represented men here in deals where the principals have known each other for years, but they do not hesitate to pay a commission because they know each other. But this getting off: let me know at once whether or not this tract is open for investigation."

It was admitted that defendant in March, 1900, conveyed 4,800 acres of the land involved to the Pioneer Cooperage Company for $19,000. At the close of the testimony introduced on behalf of plaintiff and also after all the evidence was in, defendant unavailingly

asked the court to direct the jury that under the pleadings and the evidence in the case, plaintiff was not entitled to recover. The petition of plaintiff counted on an express contract, whereby if he obtained a purchaser for defendant's entire tract of 5,480 acres of timber land at rate of $5 per acre, the latter would pay him as commission for effecting the transaction the sum of $980; but the testimony favorably considered for plaintiff established at most only a partial performance. Having elected to stand upon a special contract, he can not recover upon a *quantum meruit*, though the proof might otherwise warrant a recovery on the latter theory. [Cole v. Armour, 154 Mo. 333, 55 S. W. 476.] As stated in the decision cited, defendant was only required to meet the case exhibited in the pleadings and if a right of action not stated in the declaration was disclosed by the testimony, still defendant is not called upon to refute a cause of action not pleaded.

2.    The court among other instructions gave the following at instance of plaintiff:

"If the jury believe from the evidence that the defendant promised to pay the plaintiff the sum of $980, if he would obtain a purchaser for certain timber of defendant's land, and that thereupon the plaintiff entered into negotiations with the Pioneer Cooperage Company to induce it to buy said timber and that plaintiff notified the defendant that he was negotiating with said company and that shortly thereafter the defendant and said company negotiating together and the defendant sold his timber to said company at a price satisfactory to himself, then you will find a verdict for the plaintiff in the sum of $980; provided the plaintiff was the procuring cause in securing said purchaser and the said company would have purchased all of said land if it had contained the average quantity of timber as represented by the defendant in his proposal of January 4, 1900.

"The jury are instructed that plaintiff had a reasonable time wherein to accept the offer of the defend-

ant contained in his letter of January 4, 1900, and if the jury believe from the evidence that plaintiff did accept said offer of defendant by a letter mailed to defendant's proper address, postage prepaid, within a few days after his receipt of said letter from defendant, then, if they believe from all the evidence that such an acceptance was mailed in a reasonable time, then they will find that such mailing the said letter constituted a binding contract between the plaintiff and defendant, even though they believe from the evidence that prior to his mailing said letter the plaintiff had mailed another letter to the defendant wherein he suggested the defendant to allow him a greater commission than so stated in defendant's said letter, if they believe from the evidence that defendant did not withdraw his offer upon the receipt of the letter from the plaintiff suggesting a greater commission and in determining this question they may consider all the acts of the parties and their correspondence subsequent thereto.

"The court instructs the jury that the letter from defendant to plaintiff, in which defendant apprised plaintiff of the nature and quantity of timber offered by him to be sold, was a warranty to Veatch whereby Norman bound himself touching the quantity and nature of such timber, as described in said letter, and the measure of plaintiff's recovery in this case can not be affected by the fact, if it be a fact, that 680 acres of the 5,480 acres of the tract described in said letter did not contain any marketable white oak timber, unless the jury believed from all the evidence in this case that Veatch had actual knowledge at the time he received said letter of the quantity and quality of the white oak timber, which said 5,480-acre tract actually contained."

These instructions contemplate and present to the jury elements not included in the pleadings, in improperly directing the jury that defendant's proposition contained in his letter of January fourth referred to an

average quantity of timber, while the letter is silent in such regard.

For the errors indicated, the judgment is reversed and the cause remanded. All concur.