## WINEMILLER et al. v. MATTHEWS.

No. 16924.   Opinion Filed Dec. 14, 1926.

Rehearing Denied June 21, 1927.

**1. Brokers—Express Contract—Commission —Essentials to Right of Recovery.**

In an action by a broker to recover commissions on the sale of an oil and gas lease, where the basis of the action is an express oral contract, definite and certain in its terms and conditions, performance by the broker of the express terms and conditions of the contract is necessary to be shown as a prerequisite to a right of recovery.

**2. Same—Performance of Alternative Conditions.**

In such case, where the express conditions of the contract are three in number and alternative in character, an admission of record that two of the conditions were wholly unperformed renders proof of the performance of the third condition essential.

**3. Same — Broker Who Was Procuring Cause of Sale Entitled to Commission Over Others.**

Where several brokers are seeking to bring about the sale of the same property, none of them having an exclusive contract with the seller, the broker who induces the seller and purchaser to enter into the deal,

and whose efforts are the direct and proximate cause of the sale, is entitled to the commission even though another broker may 'have first informed the purchaser that the property could be purchased. (Nation v. Harness et al., 33 Okla. 630, 126 Pac. 799.)

**4. Same—Issues and Proof—Failure of Proof.**

Where a petition in an action to recover a broker's commission clearly and definitely states the obligatory conditions of an express contract on which recovery is sought, and the answer denies generally the allegations of the petition, the issue to be determined is whether the contract was actually performed, and where the admission and proof of plaintiff clearly discloses that he performed none of the conditions of the contract pleaded, there is a failure of proof under Comp. Stat. 1921, sec. 314, and no issue of fact remains for determination by a jury.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Edwin R. McNeill, Judge.

Action by R. S. Matthews against John H. Winemiller, L. W. Baxter, P. R. Williams and Kansuma Oil Company, a corporation, to recover a broker's commission. Judgment for plaintiff, and defendants bring error. Reversed.

This action was commenced in the district court of Tulsa county by plaintiff filing therein his petition, in which it was alleged in substance that the defendants owned certain oil and gas leases which they desired to sell, and that they had authorized John H. Winemiller, one of the defendants, to procure a purchaser for said leases; that on or about October 15, 1923, Winemiller, for himself and as agent of the other defendants, employed plaintiff to ·procure a purchaser for said leases and authorized plaintiff to procure someone to make an offer of purchase; that it was agreed that if plaintiff would procure a purchaser at a price which defendants were willing to accept for said leases, a commission of 5 per cent. on the selling price would be paid for his services; · that plaintiff called on the Tidal Oil Company and informed it that said leases were owned by defendants, and that same could be purchased; that the Tidal Oil Company, through its duly appointed officers, informed the plaintiff that it was interested in the property and would look into the matter with the view to purchasing same; that as a result of the efforts of plaintiff the property was purchased by the Tidal Oil Company for

the sum of $700,000, and that by reason thereof defendants became and are indebted to plaintiff in the sum of $35,000 as a commission upon the sale of said leases.

Defendants Winemiller, Baxter, and Kansuma Oil Company jointly filed a verified answer in which it was admitted that each of them was a part owner in said leases, but denied all other allegations of plaintiff's petition.

Defendant P. R. Williams filed his separate answer, denying generally the allegations of plaintiff's petition, admitting that he was the owner of an undivided interest in said leases; admitted that same had been sold, but denied that plaintiff had been employed, to act as agent; he denied any indebtedness to plaintiff for commission upon the sale of said leases, and his answer was unverified. Thereafter P. R. Williams also filed a pleading which was styled "Motion to Consolidate Causes," in which it was shown to the court that H. H. Medlin, Dessa L. Hanna, and F. C. Stewart had each filed separate actions against these same defendants, each action being for the recovery of the identical commission sought to be recovered by plaintiff in this action as commission for the sale of the identical leases involved in this action. It was further shown to the court in said motion that the instant defendants owed a commission to someone, but that by reason of the plaintiff in each of the four separate actions claiming said commissions defendants were unable to determine to whom said commission rightfully belonged. The prayer of the motion was that the court order all of said actions consolidated and that they be tried together, and the rightful owner of said commission be determined by the court. This motion was by the court denied and exceptions reserved.

Upon the issues framed by the petition and separate answers the cause was tried to the court and a jury October 21, 1924, resulting in a verdict in favor of plaintiff for the sum of $34,125 against all of the defendants. After unsuccessful motion for new trial defendants have brought the case here by petition in error. with case-made attached for review.

Grinstead. Scott,· Hamilton & Gross, Fred D. Oiler, Rainey, Flynn, Green & Anderson, and Calvin Jones, for plaintiffs in error.

Biddison & Campbell, for defendant in error.

Opinion by LOGSDON, C. There are numerous assignments of error in the petition in error, but in their ·presentation in the briefs

all of the assignments are embraced within four propositions. The first proposition presented reads:

"The motion to consolidate filed by the defendants contains the substantial provisions of a bill of interpleader and at least was in the nature of such a bill, and therefore should have been sustained and the different claimants to the commission required to interplead so that it could be determined who was lawfully entitled to such commission. Especially is this true as to the actions by the plaintiff in this case and Stewart in the other case, both of which were pending in the same court and being suits against the same defendants to recover the same debt or fund."

The only argument in support of the above proposition contained in the brief of defendants in the instant case is a reference to the argument and authorities upon the identical proposition presented in their brief in the case of J. J. Winemiller et al. v. F. C. Stewart, No. 16932, 125 Okla. 230, 257 Pac. 288, in this court, and the argument made and authorities cited upon this proposition in that case are adopted by reference in the brief in the instant case. This proposition has been determined adversely to defendants in cause No. 16923, supra, this day handed down, in an opinion by Ray, C., the first paragraph of the syllabus to said case reading:

"Actions which could not have been joined cannot be consolidated and tried by the same jury at the same time where any of the parties object."

This determination by this court of defendant's first proposition in the companion case above styled and numbered will be adhered to in the instant case.

Defendants' second and third propositions will be considered together as they involve and present the merits of the case fully except as to instructions of the court which are covered by their fourth proposition. The second proposition reads:

"According to the undisputed evidence in this case, that is, taking even the evidence of Matthews himself, it was one of the terms of Matthews' employment that he, Matthews, should submit an offer to Winemiller, and this being a positive provision of the contract and the same being unperformed, Matthews cannot recover. Matthews admits that he never received any offer to submit, and, therefore, never submitted any."

And the third proposition is as follows:

"In this case the plaintiff, Matthews, as grounds for his recovery, alleges that he had a contract of employment as broker, and that he has fulfilled the same. This being

true, in order for Matthews to recover it was then necessary for him to prove that he had performed every part of said contract, and, under his said allegation, if he failed to prove the performance of his contract in any particular he cannot recover on account of the foregoing allegation."

Plaintiff's right of recovery is based upon an express oral contract, no claim for compensation being made upon either an implied contract or upon a quantum meruit.

Reliance being had upon the conditions, and performance thereof by him, of an express oral contract, it must be presumed that the allegations of his petition stating the conditions of the contract are most favorable to him, and that they do not embrace any conditions which he was not bound to perform precedent to the accrual of liability in his favor. Rogers v. Brown, 15 Okla. 524, 86 Pac. 443; Wilkinson et al. v. Stone et al., 82 Okla. 296, 200 Pac. 196. What were the obligations which he undertook to perform under the contract alleged by him? They were three in number and alternative in character: "(a) To procure a purchaser for said lease; (b) to procure some one to make an offer to purchase same; (c) to procure a purchaser for a price at which defendants were willing to sell." Plaintiff, having deliberately chosen and stated the language of the conditions which he bound himself to perform, must show a performance by him of some one or all of such conditions before he is entitled to compensation for services rendered under such express contract. The rule here applicable was adopted and announced by this court in the early case of King et al. v. Stephenson et al., 29 Okla. 29, 116 Pac. 183, where, in the body of the opinion, it was declared:

"Where plaintiff declares upon an express contract, he must, except in those cases where on the introduction of evidence by consent a departure is permitted, succeed or fail upon the issue which he thus tenders. Walker's Law of Real Estate Agency, par. 57, p. 402; 9 Cyc. pp. 748, 749; 19 Cyc. p. 275: Emery v. Atlanta Real Estate Exch., 88 Ga. 321, 14 S. E. 556; Miller v. Insurance Co., 1 Abb. N. C. (N. Y.) 470; Oliver v. Morawetz, 95 Wis. 1, 69 N. W. 977; Dorrington et al. v. Powell, 52 Neb. 440, 72 N. W. 587; McDonnell v. Stevinson, 104 Mo. App. 191, 77 S. W. 766; Veatch v. Norman, 109 Mo. App. 387, 84 S. W. 350; McDonald v. Ortman, 98 Mich. 40, 56 N. W. 1055; Thuner v. Kanter, 102 Mich. 59, 60 N. W. 299."

Under each of the three conditions of plaintiff's alleged contract he bound himself "to procure" something for defendants. Defendants didn't seek out plaintiff and solicit

his services in their behalf. He sought them and tendered his services. He assumed the obligations of a special and express contract voluntarily. Upon the performance of this contract by him must depend his right of recovery.

After making this alleged contract plaintiff called on Mr. C. E. Hane, vice president of the Tidal Oil Company, and submitted a plat of the property to him. Plaintiff testified:

"He said it was a very attractive property, that his attention had been called to the property six months previous to that time, but the price was so high that they didn't consider it."

In the same conversation Mr. Hane requested plaintiff to furnish additional data which he desired concerning the property, but this plaintiff declined to do, stating that the plat contained all the data which he knew anything about. Mr. Hane then asked what price the owners placed on the property at that time. Plaintiff told him he did not know. The data which Mr. Hane requested plaintiff to furnish was afterwards given to Hane by another broker.

Mr. Frank Haskell was the only officer of the Tidal Oil Company authorized to buy this character of property. About two weeks after this conversation with Mr. Hane, plaintiff saw and talked with Mr. Haskell. This conversation is thus related by plaintiff:

"A. I says, 'Mr. Haskell, I have submitted a property here that looks very attractive to me, several producing wells on it, a square section, and it is the kind of stuff you like; it is Bartlesville sand, an average of about 55 or 56 feet of sand, and the property is performing pretty nice;' and when you thin the bunch out here and we get time to talk I would like to have a talk with you about it.' Just at that minute Mr. Hane came in the door and wanted to see Mr. Haskell on something very important, very urgent, and he says, 'I will see you later,' got up and walked out of the office, and I walked out behind him, and Mr. Stewart, as I recall, maybe Mr. Rose, was there in the hall walking up and down by the door. That was all that was said to Mr. Haskell."

Plaintiff's conversation with Hane occurred October 15th, and the one with Haskell between November 1st and 5th. No other conversation took place between plaintiff and Haskell. No other conversation took place between plaintiff and Hane, or any other officer of the Tidal Oil Company, until after Hane had secured the additional data which he wanted from other sources, and until after Haskell, through another intermediary, had made an offer to defendants for

the property. After relating the above-quoted conversation with Haskell plaintiff testified:

"Q. After that did you have any conversation with any of the officers or representatives of the Tidal Oil Company with reference to this sale? A. I did. Q. When? And with whom? A. I talked to Mr. Hane about it. Q. When? A. While the negotiations were going on; after the offer had been accepted, but I don't think the money had been paid over."

The offer by Mr. Haskell and its acceptance by defendants occurred November 16th, but the conveyances were not executed on that day. During the direct examination of J. H. Winemiller, as a witness in behalf of defendants, admissions of record were made by plaintiff thus:

"Q. Did he (Matthews) ever bring to you anywhere, any member of the Tidal Oil Company officials with reference to the purchase of this property? A. No. Mr. Biddison (attorney for plaintiff): We admit that he did not, so you won't need to waste any time with that line of interrogatories. Q. Did he ever at any time communicate to you that he had an offer from the Tidal Oil Company? Mr. Biddison: We admit that he did not, and that he never did have an offer, we admit that."

After the conversation with Haskell, above quoted, and with a $35,000 commission dependent upon his efforts "to procure" something for defendants, plaintiff left town, entrusting the further carrying out of his contract to his friend, Stinson, who was himself trying to sell other property to the Tidal Oil Company. After his return to town he saw an item in a newspaper to the effect that the property had been sold to that company. Thereafter, and on November 21st or 22nd, he went to Winemiller's office, and, without making any claim that he had performed the conditions of his contract, but asserting only that he had offered the property to the Tidal and had given the data which he then had to it, asked Winemiller who, in his opinion, that brokerage belonged to.

With plaintiff's admissions of record, as above quoted, the second and third obligatory conditions of his alleged contract were admittedly not performed. Neither did plaintiff's evidence reasonably tend to show a performance of the first obligatory condition. His conversation with Hane on October 15th had no tendency "to procure a purchaser for said lease," because he declined and failed to furnish the information which Hane desired and requested, and without which purchase of the property would not

be considered by his company. His conversation with Haskell about November 5th was of the most casual kind and did not disclose the description or ownership of the property so as to identify it in Haskell's mind with the property which Haskell afterwards purchased from defendants through the agency of another. So little was plaintiff impressed with the success of his efforts to perform his contract, that he lost touch with everybody and everything concerned with the transaction, and derived his first information of what had occurred from a newspaper report of the deal more than a month after his conversation with Hane.

On behalf of defendants the testimony of all of their witnesses corroborated the record admissions of plaintiff heretofore set out. Upon first obligatory condition of plaintiff's alleged contract the testimony of defendants' witnesses is clear and unequivocal that he did not procure the purchaser. Frank Haskell, president of the Tidal Oil Company, testified that he had been interested in the proposed purchase by another broker, who gave him the description, ownership, and approximate price, prior to the casual conversation related by plaintiff; that plaintiff's conversation with him gave him no information which identified the property in which plaintiff was interested with property previously submitted to him by the other broker; that this other broker arranged for and went with him to view the property, and kept in touch with him until the deal was closed.

Mr. Hane, vice president, testified that about November 10th, while Mr. Haskell and this other broker were discussing the proposed purchase in the company's office, he looked at the plat they were examining and recognized the property was the same shown on the plat left with him by plaintiff, but which he had pigeon-holed because of insufficient data concerning the property, that he then got the Matthews plat and showed it to Mr. Haskell, who, after examining it, remarked, "Well, you haven't any information;" that the broker then, with Mr. Haskell, made arrangements for the trip to view the property. Being recalled, this witness further testified that a new plat and tabulation of information was made by Mr. Haskell and this other broker, and that it was upon the information thus obtained, and after viewing the property, that Mr. Haskell based the offer which he made for the property.

Mr. Beard, also of the Tidal Oil Company, testified that he was in Hane's office when plaintiff submitted his plat to Hane on October 15th, and that Hane requested plaintiff to furnish further data as that then shown on the plat did not give sufficient information to justify a trip to view the property.

The most favorable view which the evidence and the admissions in the record of the trial justify in support of plaintiff's claim is, that he voluntarily sought out defendants and made an offer of his services in the sale of the property upon three express alternative conditions, his services to be directed toward two expressly named prospective purchasers; that his offer was accepted upon the conditions named by him; that he saw one of the prospective purchasers, but was informed by one of its officers that the data which he had gave insufficient information to make the proposition of interest, and was requested to furnish further data; that he did not do so; that subsequently he mentioned the property casually to another officer of the same prospective purchaser, but gave no information as to description or ownership; that he never talked with either of these officers again until after the property had been purchased through another broker a month after his unsatisfactory proposition and data had been first submitted. Plaintiff does not claim that he had an exclusive contract with defendants.

In the case of Parsons v. Heenan, 104 Okla. 86, 230 Pac. 502, this court, in the body of the opinion, after citing numerous brokerage commission cases, restated the rule announced in King et al. v. Stephenson et al., supra, in this language:

"In all of the cases above cited by defendants recovery was sought, or had, on quantum meruit based upon an implied contract or on an express contract whereby the broker was to secure a purchaser. In such cases this court has uniformly held that it was necessary for the broker to prove that he was the moving or procuring cause of the sale. But in order that men may be free to conduct their own business in their own way, it must be held that they have a right to contract for a service less than securing a purchaser. **It is only necessary that a broker comply with his contract to entitle him to his commission.** This view of the law is sustained by the following authorities: Taffree v. Saint, 147 Iowa, 361, 126 N. W. 373; Godfrey v. Wisner, 169 Cal. 667, 147 Pac. 952; Langdon v. Taylor, 180 Fed. 385; Mims v. Reid, 286 Fed. 900; Broderick v. Hart (Conn.) 117 Atl. 491; Hugill v. Weekly (W. Va.) 61 S. E. 360, 15 L. R. A. 1262.

In Nation v. Harness et al., 33 Okla. 630, 126 Pac. 799, the syllabus reads:

"When property has been listed for sale with different real estate agents, the agent who induces the seller and purchaser to enter into the contract is entitled to the commission, although another agent may have first brought the parties together."

This identical language was reiterated by this court as the third paragraph of the syllabus to the case of McKinney et al. v. Biggs, 96 Okla. 266, 220 Pac. 459.

The first paragraph of the syllabus to the case of Coleman v. Moreland et al., 89 Okla. 128, 213 Pac. 843, reads:

"If the evidence shows that, after a tract of land is placed in a broker's hands for sale, the vendor and vendee are brought together in such a manner as to show that the broker's efforts were, in a reasonable degree, effective in consummating the sale, then the broker is entitled to compensation; but if the evidence merely shows that the extent of the broker's acts was to call the attention of the prospective purchaser to the fact that the land was for sale, and thereafter the vendor and prospective purchaser reached an agreement, solely by their own negotiations, then the broker cannot be said to have been the proximate, procuring and effective cause for the sale, and is not entitled to a commission."

Upon the contract alleged and proved in this case it is clearly evident that there was an entire failure of proof of performance by plaintiff. This presents the situation contemplated in the enactment of section 314, Comp. Stat. 1921, which reads:

"When, however, the allegation of the claim or defense, to which the proof is directed, is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance within the last two sections, but a failure of proof."

This being true, no question of fact was presented for determination by the jury. At the close of plaintiff's evidence defendants interposed demurrers thereto which were overruled. At the close of all the evidence each defendant separately filed a motion for a directed verdict, which motions were overruled and exceptions reserved. In this action the trial court erred as a matter of law.

This conclusion renders unnecessary a consideration of the remaining proposition which involves alleged errors in the giving of instructions and in the refusal of requested instructions.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

By the Court: It is so ordered.

(On Rehearing.)

PER CURIAM. This matter is now before this court on petition for rehearing. On reviewing the opinion filed herein, and the record, the court concludes that the opinion heretofore filed in this cause should be modified and supplemented to this extent: That the judgment of the trial court is reversed, with directions to the trial court to enter an order sustaining the motion for judgment on the record, in favor of the defendant, and dismissing the plaintiff's cause of action.

The petition for rehearing is denied.

Note.—See under (1, 2) 9 C. J. p. 588, §85. (3) 9 C. J. p. 618, §98; anno. 44 L. R. A. 321: 4 R. C. L. p. 298; 1 R. C. L. Supp. p. 1109. (4) 9 C. J. p. 654, §127.