STATE of Oklahoma ex rel. Landra Jean BAILEY, a/k/a Landra Jean Powers, Appellant,

v.

Donald Lee POWERS, Appellee.

No. 49935.

Supreme Court of Oklahoma.

July 5, 1977.

John M. Insabella, Asst. Dist. Atty., Tulsa, for appellant.

Boyd & Parks by Ed Parks, Tulsa, for appellee.

HODGES, Chief Justice.

This is an appeal from a directed verdict of not guilty in a paternity suit based on the complaining witness' admission that a common law marriage existed between the parties.

A complaint of paternity was filed, pursuant to 10 O.S.1974 Supp. § 71, by appellant, Landra Jean Bailey a/k/a Landra Jean Powers, by and through the State of Oklahoma, against Donald Lee Powers, the appellee. The complaint alleged that: on or about February 8, 1975, the appellant became pregnant; a child was born alive and out of wedlock on November 20, 1975; and that appellee is the father of the child.

On June 21, 1976, a jury was empaneled to hear the matter and the State called the appellant as its first witness. Before the State had the opportunity to complete direct examination of the appellant, the trial court allowed the appellee to voir dire the witness. Thereafter, the trial court directed the jury to enter a verdict of "not guilty," based upon its finding that the appellant testified that she and the appellee held themselves out as husband and wife during the time they lived together,[1] which the trial court held was in direct conflict with the affidavit in the complaint of paternity.

The appellant alleges that the appellant's mere testimony as to the possibility of a common law marriage does not constitute a common law marriage in the absence of evidence of a positive mutual intent to enter into a marriage relationship. It is, therefore, argued that because the record is void of any testimony by appellee holding himself out as the husband of the appellant, a common law relationship has not been established. It is contended the trial court erred in not allowing the appellant the op-

1. The pertinent testimony of appellant was:
Q. And you entered the hospital under the name of Landra Powers, did you not?
A. Yes.
Q. And on the birth certificate of this child you named the child the last name Powers, did you not?
A. Yes, I did.
Q. And you have claimed a common law relationship with this young man, Donald Powers, for sometime? Have you?
A. Yes, I have.
Q. And that relationship as far as you are concerned culminated into a common law marriage. Isn't that right?
A. Yes.
Q. And you still claim that at this time, don't you?
A. Uh huh.
Q. And as a matter of fact you asked for a divorce from Donald Powers under the name of Landra Powers, did you not?
A. Yes, I did.
Q. And at this time you tell this Judge as far as you are concerned there is a common law marriage existing between yourself and the defendant Donald Powers? Is that right?
A. Yes.
Q. All right. Now how long do you tell this Judge you lived with Donald Powers as his wife?
A. How long did I live with him?
Q. Yes.
A. From April until February, 1974,—February, 1975.
Q. Approximately one year? Approximately one year as his wife, is that correct?
A. Yes.
Q. And you told people you were his common law wife, didn't you?
A. Yes.
Q. And you held yourself out to be—by holding out I mean you let people think you were his common law wife?
A. Yes, a few.
Q. Beg pardon?
A. A few.
Q. All right. During the time you were married to Don, when this relationship commenced, did you work?
A. I had a couple of jobs.
Q. Right. And did you contribute money to the relationship or to the marriage, so to speak? Did you spend money for home purposes?
A. When I was working and had the money, yes.
Q. All right. And once again—I may have asked you, and if I did I apologize. You asked for a divorce in the District Court from Donald Powers, didn't you?
A. That's right.
Q. And then later on dismissed this action for divorce?
A. Yes, I did.
Q. At this time you still claim to be the common law wife of Donald Powers, defendant in this case?
A. Yes, I do.

portunity to present its evidence in its entirety as provided by 12 O.S.1971 § 577(3).[2]

Appellee argues that the prosecutrix could not in good faith initiate the action because she could not and did not truthfully swear to the truthfulness of the affidavit, i. e., that she and appellee were unmarried.[3]

The sole purpose of the paternity statutes is to provide a judicial forum for a woman who has delivered a child out of wedlock. Common law marriages are recognized in Oklahoma.[4] Because the prosecutrix asserted and admitted, under oath, that she was married to the appellee when the child was conceived, we must agree that she could not institute the paternity action in good faith, and that her proper forum is in the divorce court.

The Legislature has recently enacted a statute to provide for the situation which is presented to us. Although it was not effective at the time of trial, it would govern any further disposition of this matter. It is provided by 12 O.S.1976 Supp. § 1277.2:

> In an action for a divorce, legal separation or annulment where there are children born to the parties, the court may determine if the parties to the action are the parents of the children, although the court finds that the parties are not married; and if the parties to the action are the parents of the children, the court may determine which party should have custody of said children, and it may award child support to the parent to whom it awards custody, and make an appropriate order for payment of costs and attorney's fees.

AFFIRMED.

LAVENDER, V. C. J., and WILLIAMS, IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ.

---

2. It is provided by 12 O.S.1971 § 577(3):
 The party on whom rests the burden of the issues must first produce his evidence; after he has closed his evidence the adverse party may interpose and file a demurrer thereto, upon the ground that no cause of action or defense is proved. If the court shall sustain the demurrer, such judgment shall be rendered for the party demurring as the state of the pleadings or the proof shall demand. If the demurrer be overruled, the adverse party will then produce his evidence.

3. The complaint requires, pursuant to 10 O.S. 1974 Supp. § 71:
 Whenever any woman residing in any county of this state is delivered of a child out of wedlock, or is pregnant with a child which if born alive will be a child born out of wedlock, complaint may be made, in writing duly verified, by any person to the county court stating that fact and charging the proper person with being the father thereof. The proceeding shall be entitled in the name of the state against the accused as defendant. The death of the mother shall not abate an action which is brought under this section, and it will not prevent the bringing of an action for the support of the child.
 In a bastardy proceeding in order for the complaint to be sufficient, it must allege the mother is a resident of the county in which the complaint is brought, that the mother was a single woman, and that defendant was the father of the child. *Greenback v. State,* 169 Okl. 616, 36 P.2d 882 (1934).

4. *In Re Hornbach's Estate,* 475 P.2d 184 (Okl. 1970). *Gilmore, Gardner & Kirk Oil Co. v. Harvel,* 208 Okl. 664, 258 P.2d 632 (1953).