[Civ. No. 4553. Fifth Dist. Apr. 19, 1979.]

COUNTY OF FRESNO et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
JAMES EDDIE WILLIAMS, Real Party in Interest.

134

**COUNSEL**

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant

Attorney General, Gregory W. Baugher and James Ching, Deputy Attorneys General, for Petitioners.

No appearance for Respondent.

Georgeson & Emerich, C. Russell Georgeson and Ronald S. Sims for Real Party in Interest.

## OPINION

**HOPPER, J.**—The principal issue in this writ proceeding is whether it is an abuse of discretion for a trial court to deny a motion under Evidence Code section 893 for a human leucoyte antigen (hereinafter HLA) test to establish parentage in a civil paternity suit when extended factor blood testing has already taken place and the defendant was not excluded by such test. We conclude that under the circumstances it is an abuse of discretion.

### FACTS

On August 28, 1964, Ruth Williams (hereinafter Ruth) and James Williams (hereinafter James) obtained a final decree of divorce. On November 2, 1965, Ruth gave birth to David.

On July 29, 1977, the County of Fresno and David, through his guardian ad litem (hereinafter petitioners) filed a complaint in superior court to establish that James was the natural father of David. On November 18, 1977, the superior court ordered Ruth, David and James to submit to an extended factor blood test pursuant to a stipulation filed by the parties. The expert who analyzed the blood samples reported that James could not be excluded as the father of David and the probability that James was David's father was 47 percent.

On September 29, 1978, petitioners moved pursuant to Evidence Code section 893 for an order that Ruth, James and David submit to the HLA test. James opposed the motion arguing that the HLA test results would be used to establish paternity. The superior court denied petitioners' motion. Petitioners seek a writ of mandate directing the superior court to grant petitioners' motion and order submission of blood samples for HLA analysis.

## DISCUSSION

James contends: (1) a blood test result showing 47 percent probability of paternity excludes him from being the father as a matter of law because the child has not proven he is the father by "a preponderance of the evidence" (greater than 50 percent); (2) there was no abuse of discretion because petitioners did not show good cause for the HLA test and the parties stipulated to the "extended factor blood tests"; and (3) the HLA test should not be ordered because it could only be used to prove paternity and is therefore inadmissible under the authority of *Dodd* v. *Henkel* (1978) 84 Cal.App.3d 604 [148 Cal.Rptr. 780].

James argues basically as follows: When the expert on the extended factor test asserted that James cannot be excluded as the father of David, the expert is speaking of medical scientific exclusion and not the legal preponderance of the evidence exclusion. Under Evidence Code section 893[1] the trial court has the discretion to determine when a sufficient number of experts have analyzed the results of a blood test to determine possible exclusion. James concludes that since the probability that he is the father is now 47 percent, he has been legally excluded as the natural father by the test because there is not more than 50 percent probability that he is the father.

■ We are not persuaded that legal exclusion has already taken place. The conclusion by the expert was that James was *not* medically excluded by the extended factor test. Such an extended factor test can establish nonpaternity, but not paternity. (See *Dodd* v. *Henkel, supra,* 84 Cal.App.3d 604, 607.) By stipulation of the parties, the extended factor test results and the written reports are admissible in evidence in this case. However, the admissibility of such evidence does not mean that petitioners have failed to prove paternity by a "preponderance of the evidence." The determination on whether or not the burden of proof has been met is for the trier of fact from *all* of the evidence.

*Cramer* v. *Morrison* (1979) 88 Cal.App.3d 873 [153 Cal.Rptr. 865] held that the HLA test is admissible to prove paternity, assuming that an adequate

---

[1]Evidence Code section 893 provides: "The tests shall be made by experts qualified as examiners of blood types who shall be appointed by the court. The experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties. Any party or person at whose suggestion the tests have been ordered may demand that other experts, qualified as examiners of blood types, perform independent tests under order of the court, the results of which may be offered in evidence. The number and qualifications of such experts shall be determined by the court."

foundation is laid. Thus, *Morrison* renders James' third contention without merit. Even when a test does not exclude a defendant from being the possible father, it can be a significant factor to be considered by the parties in facilitating resolution of cases without trial. (See *Michael B.* v. *Superior Court* (1978) 86 Cal.App.3d 1006, 1009-1010 [150 Cal.Rptr. 586].)

 We construe Evidence Code section 893 to mean, and we hold, that the court has no discretion to deny an HLA test upon demand of any party or person at whose suggestion an original extended factor test has been ordered. At least insofar as the second test is concerned, the statute is mandatory and we reject the contention by James that the failure of the California Legislature to adopt section 11 of the Uniform Parentage Act[2] makes Evidence Code section 893 discretionary. We also reject any assertion that Evidence Code section 893 is confusing in that it cannot be determined if the independent tests refer to new blood samples or to reanalysis of the old samples. There is no reason, in law or logic, to require that such a choice be made. The statute can in varying circumstances apply to both possibilities.

"Demand" is a crucial word in Evidence Code section 893. Demand means "to ask peremptorily . . .; to ask for . . . with legal right . . .; to claim as something one is legally or rightfully entitled to" (3 Oxford English Dict. (1933) p. 173, col. 2); "a requisition or request to do a particular thing specified under a claim of right on the part of the person requesting" (1 Bouvier's Law Dict. (8th ed. 1914) p. 831, col. 2); "a peremptory claim to a thing of right, different from claim, in that it presupposes that there is no defense or doubt upon question of right" (Black's Law Dict. (4th rev. ed. 1968) p. 516, col. 2); "to 'demand' is to make a peremptory request" (Webster's Third New Internat. Dict. (1961) p. 598). In the statute in question we construe the word "demand" to be mandatory. Such an interpretation is not only sound from the standpoint of the common meaning of the term, but it is also logically consistent with the purpose of the Uniform Act on Blood Tests to Determine Paternity (Evid. Code, § 890 et seq.).

The moving party need not show "good cause" for the more precise test. Such a requirement would make the statute practically identical to the general discovery statute rather than being specially geared to blood tests in paternity actions. (See Louisell, Modern Cal. Discovery (2d ed.

---

[2]Section 11, subdivision (b), provides: "The court, upon reasonable request by a party, shall order that independent tests be performed by other experts qualified as examiner of blood types."

1972) § 7.05, p. 481.) The very existence of another more sophisticated and exact test is sufficient "good cause" in and of itself to warrant use of the second test by the court in successfully completing the difficult search for the truth.

In addition, to the extent that the objective evidence produced by the added test contributes to the resolution of the paternity issue, it may reduce the embarrassment of usual discovery procedures concerning conception.

Public policy favors the use of objective, highly accurate scientific analysis. The HLA test appears to be highly probative evidence on the issue of paternity. The results in *Morrison* (see p. 884) established a 98.3 percent probability that the defendant was the father of the child. Use of the HLA tissue typing system *alone* provides a 78 percent probability of exclusion of an alleged father (see *Salas* v. *Cortez* (1979) 24 Cal.3d 22, 30, fn. 6 [154 Cal.Rptr. 529, 593 P.2d 226]). Under Evidence Code section 895, if it is the conclusion of all the experts that the alleged father is excluded, the issue of paternity must be resolved accordingly.

As our Supreme Court said in *Salas* (at p. 34), "[T]he state owes it to the child to insure that an accurate determination of parentage will be made."

Evidence Code section 893 does permit discretion regarding the "number and qualifications of" experts but not as to the number of additional different tests which tests may be more refined and sophisticated than the preceding one,[3] upon a motion timely made by the parties in the manner set forth in Evidence Code section 893. The admissibility of the test results is subject, of course, to an adequate foundation being laid for its introduction.

Let a writ of mandate issue directing respondent court to grant petitioners' motion and to order submission of blood samples for HLA analysis.

Brown (G. A.), P. J., and Franson, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied June 27, 1979.

---

[3]There is some indication that because the statute consistently speaks of "experts" in the plural, the blood tests must be made by more than one physician (see *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 620, fn. 5 [7 Cal.Rptr. 129, 354 P.2d 657]).