Michael Joe SARTIN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–183.

Court of Criminal Appeals of Oklahoma.

April 29, 1980.

Burke Mordy, Mordy & Clark, Ardmore, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., Timothy S. Frets, Legal Intern, for appellee.

## OPINION

CORNISH, Presiding Judge:

The appellant was convicted of the crime of Manslaughter in the First Degree in the District Court of Marshall County, Case No. CRF–77–02. Punishment was set at ten (10) years in the State penitentiary.

The record reflects that the appellant crossed the center lane while driving on Highway 70 on August 23, 1976, resulting in a head-on collision with a pickup in which the deceased, Maurice Milton Carter, was a passenger. Although he sustained personal injuries, the appellant exhibited a glassy stare at the time of the accident but appeared to be in no pain. Several witnesses, including an emergency room physician, attributed this condition to drug intoxication.

### I

The appellant first argues that the testimony of State's witness, Dr. Wade Warren, as to the results of a chemical analysis report represented inadmissible hearsay. The State responds by asserting that if hearsay was involved the appellant invited the error and has now waived his right to complain, citing *Henson v. State*, Okl.Cr., 551 P.2d 1152 (1976).

Both parties fail to argue the law applicable to the factual situation before us. Admissibility of the results of a chemical analysis report has been considered by this Court many times and is not a hearsay question.[1]

Here, the blood test was taken by a doctor at a highway patrolman's request,

---

1. We would agree that the testimony by Dr. Warren that he had seen a report indicating there were drugs present in the appellant's blood was a hearsay statement and not within any recognized exception to the hearsay rule.

pursuant to 47 O.S.Supp.1975, § 751, et seq., known as the "implied consent" statute. At trial, the defense counsel inquired of the emergency room physician whether a blood sample was taken from the appellant. The doctor replied affirmatively. Then on redirect examination, over objection by the appellant, the State was allowed to question this doctor as to the results of the test. The doctor stated, "The report I saw indicated there were drugs in the blood present."

One of the first cases to deal with this question was *Lorenz v. State*, Okl.Cr., 406 P.2d 278 (1965). There, the defendant failed to make a curve and his car turned over. He was charged with Driving While Under the Influence of Alcohol. At the hospital a blood sample was drawn from his body and an alcohol blood test was taken to the police. Citing *Cox v. State*, Okl.Cr., 395 P.2d 954 (1964), the Court held:

"[T]o admit testimony of the results of a blood test, taken without defendant's consent violated defendant's constitutional right. Article 2, Section 21, . . . says: 'No person shall be compelled to give evidence which will tend to incriminate him.' . . . This provision of the Constitution may be waived by defendant's voluntary consent to the blood test, however, it can hardly be said that an unconscious person is capable of giving consent." (Citations omitted)

More recently in *State v. Wood*, Okl.Cr., 576 P.2d 1181 (1978), we reaffirmed our earlier holding that the implied consent statute means that a person driving upon the public roads gives his implied consent to a blood test in the event he is rendered unconscious as a result of an automobile collision and the police have probable cause to believe he was driving while intoxicated. We further held therein that an individual must be given the opportunity, when he regains consciousness, to revoke his consent, in which case the blood test and its results would not be admissible.

Certain guidelines to be followed in all future cases having the same pertinent facts were established in *State v. Wood*, supra:

". . . (1) [O]fficers attempting to take blood or breath from an unconscious defendant must have probable cause to search, as required in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and as required by 47 O.S.Supp.1975, § 751; (2) the person sought to be tested must be unconscious, or so near thereto as to be incapable of consent; (3) when the person regains consciousness, at some opportune time, he must be given an opportunity to revoke his consent to the taking of the blood test. This can be done at trial, preliminary, or prior to any hearing. However, the decision, once made, is binding. Thus, where the crime charged is a felony the decision would have to be made at preliminary hearing or prior thereto; (4) it is not necessary that the State provide defendant with the results of the test prior to his decision; (5) if the defendant has already been charged at the time he is asked to make his decision he is entitled to the assistance of counsel."

█ In the instant case, both a witness at the scene, who had considerable first aid training and experience with the drug cases involving soldiers in View Nam, and a highway patrolman testified they observed what appeared to be drug intoxication in the appellant. The emergency room doctor testified the appellant appeared to be in a "euphoretic condition" and, in his opinion, was not in shock. It was the doctor's impression that the appellant was under the influence of some type of drugs. The record is silent concerning whether the appellant consented to the blood test. This Court cannot assume that silence indicates consent or the waiver of the right guaranteed by Art. II, § 21, of the Oklahoma State Constitution. Clearly then, the trial court erred in admitting evidence of the blood test and its results.

█ This admission further constituted error because the appellant was not accorded the right to cross-examine the witness who made the blood test as to his competency, the method employed, and other factors associated with the reliability of such tests.

## II

While the admissibility of the results of the blood test under the circumstances here would also be a sufficient ground for reversal, there was other evidence introduced which was of suspect relevance. This concerns the trial court's permitting the prosecution to question two witnesses regarding the details of another crime: namely, unauthorized possession of a narcotic drug. The testimony to which the appellant objects relates to the discovery of a half empty syringe on the appellant's person five and one-half hours after the accident and statements allegedly made by the appellant at the Ardmore hospital that he was a drug user and that 50 mgs. of Demerol would not be sufficient to kill the pain, that he would need at least 200 mgs.

A nurse testified that on the evening of the accident she observed a nursing assistant retrieve a syringe containing yellow fluid from the inside of the appellant's underpants. The syringe was discovered next to the catheter which had been inserted in the appellant after surgery. The nurse stated that after retrieval of the syringe the appellant was much calmer and not complaining of pain. Although the syringe was turned over to the police, the contents were never identified at trial. The time and manner of discovery seem to indicate that the syringe was not in the possession of the appellant at the time of the accident or at the time of the insertion of the catheter.

█ It is well settled that when a person is put on trial he is to be convicted by evidence which shows him guilty of the offense charged, and proof that he is guilty of other offenses not connected to the offense for which is on trial must be excluded unless it comes within one of the five generally recognized exceptions. *Atnip v. State*, Okl.Cr., 564 P.2d 660 (1977). It does not appear from the record that the evidence complained of falls within any of these exceptions.

█ Several cases have allowed evidence of any facts or circumstances which show intoxication during a period of several hours before or after an accident. See *Nail v. State*, 33 Okl.Cr. 100, 242 P. 270 (1925); and *Little Star v. State*, 55 Okl.Cr. 294, 29 P.2d 995 (1934).[2] Before such evidence should be admitted it must be relevant to the charge being tried. If the evidence has some relevance, the remoteness will only go to the weight of the evidence and not to the admissibility. In the present case, we fail to see how the introduction of the aforementioned evidence over objections was relevant to the appellant's condition at the time of the collision. This is particularly true of the half-empty syringe.

For the above and foregoing reasons, the judgment and sentence is *REVERSED* and *REMANDED* for a new trial not inconsistent with the views expressed herein.

BRETT, J., concurs.

BUSSEY, J., concurs in results.

---

**2.** In *Nail v. State*, 33 Okl.Cr. 100, 242 P. 270 (1925), admissibility of evidence that the defendant was intoxicated upon her surrender to officers some eight hours after a collision, while remote, was held a matter proper to be submitted to the jury, and the remoteness in point of time went to its weight rather than to its admissibility.

In *Little Star v. State*, 55 Okl.Cr. 294, 29 P.2d 995 (1934), which involved a two car collision in which the defendant was driving while intoxicated, we upheld the trial court's ruling allowing the jury to consider evidence of other offenses committed by the defendant by driving a car while intoxicated on the same day but three or four hours prior to the collision.