(644 P.2d 490)
No. 53,200

JARROD W. TICE, a minor child, by his next friend and mother, LESLIE A. (TICE) HORNER, *Appellee,* v. DAVID A. RICHARDSON, *Appellant.*

Opinion filed May 6, 1982.

*Bill Wiswell,* of Olathe, for the appellant.

*Andrew R. Heyl,* and *Thomas F. McGraw, III,* of Overland Park, for the appellees.

Before SWINEHART, P.J., ABBOTT, J., and HARRY G. MILLER, District Judge Retired, Assigned.

MILLER, J.: Defendant has appealed from a judgment finding him to be the father of Jarrod Tice, the plaintiff. At issue is the admissibility in evidence of the results of human leucocyte antigen tests (herein referred to as HLA tests) to prove paternity.

At the trial, Leslie Horner, the plaintiff's mother, testified that Jarrod was born August 7, 1978, and that the date of conception was about the first of November, 1977. She was able to make this determination because of a missed menstrual period.

Leslie's testimony was that she met defendant in September of 1977, when she was sixteen and he was twenty years of age, and that she dated him until December of 1977. She testified that during this period she had intercourse with defendant numerous times and with no one else, except for one time on New Year's

Eve, December 31, 1977, when she had intercourse with her present husband, Mike Horner.

Dr. Ronald Cross testified as an expert witness. He testified that he had taken blood samples from Jarrod Tice, Leslie Horner, Mike Horner, and defendant, David Richardson, and subjected the samples to HLA tests. On the basis of the test results, Dr. Cross was permitted to testify that the tests excluded Mike Horner as the father, but showed to a plausibility of 99.96% that defendant was the father of Jarrod. Dr. Cross stated that in his opinion, to a medical and scientific certainty, defendant was the father of plaintiff.

Defendant, in essence, contends that Dr. Cross should not have been permitted to testify as to the results of the HLA tests to *prove* paternity since the tests are relatively new, are not based on adequate data, and have not yet acquired unqualified acceptance in the scientific community. He further contends that the plausibility of parentage conclusion is based on statistical tables prepared by persons other than Dr. Cross who are not subject to cross-examination.

The HLA test for paternity is a relatively new test which compares genetic antigens identified in the child which could only have been received from the alleged father with the frequency with which these antigens appear in the random population at large.

The test for the admissibility of new scientific evidence was discussed in *State v. Washington,* 229 Kan. 47, 53, 622 P.2d 986 (1981), wherein the court stated:

"The general test for determining the admissibility of a new scientific technique was enunciated in *Frye v. United States,* 54 App. D.C. 46, 293 F. 1013 (1923). Simply stated, *Frye* requires that, before a scientific opinion may be received as evidence at trial, the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular scientific field. Thus, according to the *Frye* standard, if a new scientific technique's validity has not been generally accepted or is only regarded as an experimental technique, then expert testimony based upon its results should not be admitted into evidence. *Reed v. State,* 283 Md. 374, 391 A.2d 364 (1978).

"*Frye v. United States,* 54 App. D.C. 46, was cited with approval in *State v. Lowry,* 163 Kan. 622, 629, 185 P.2d 147 (1947). *Frye* and *Lowry* both involved the admissibility of the results of a lie detector examination. The *Frye* test has been accepted as the standard in practically all of the courts of this country which have considered the question of the admissibility of new scientific evidence."

It is the general acceptance in the expert's particular field of

science which assures the validity of the scientific evidence, and in determining this factor the court may consider other evidence, such as the widespread and practical usages of the scientific principle involved and articles from reliable sources appearing in scientific journals and other publications. In *Reed v. State,* 283 Md. 374, 380, 391 A.2d 364 (1978), cited with approval in *State v. Washington,* 229 Kan. at 53, the court stated:

"On occasion, the validity and reliability of a scientific technique may be so broadly and generally accepted in the scientific community that a trial court may take judicial notice of its reliability. Such is commonly the case today with regard to ballistics tests, fingerprint identification, blood tests, and the like. *See Shanks v. State,* supra, 185 Md. [437] at 440 [45 A. 2d 85 (1945)]. Similarly, a trial court might take judicial notice of the invalidity or unreliability of procedures widely recognized in the scientific community as bogus or experimental. However, if the reliability of a particular technique cannot be judicially noticed, it is necessary that the reliability be demonstrated before testimony based on the technique can be introduced into evidence. Although this demonstration will normally include testimony by witnesses, a court can and should also take notice of law journal articles, articles from reliable sources that appear in scientific journals, and other publications which bear on the degree of acceptance by recognized experts that a particular process has achieved. *People v. Law,* 40 Cal. App. 3d 69, 75, 114 Cal. Rptr. 708, 711 (1974)."

The HLA test has been described as an improved and reliable test for determining paternity in articles appearing in a number of medical and legal periodicals. As early as 1976, the American Bar Association approved HLA tests as a means of excluding the defendant from being the father, although the endorsement was not intended to exclude other tests. Abbott, *Joint AMA-ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage,* 10 Family L.Q. 247, 256 (1976). The most recent commentary on this subject appears in Mendelson, *From Here to Paternity,* 9 Barrister 12 (1982).

Another author, discussing HLA testing and probability evidence with respect to the *Frye* standard on admissibility of scientific evidence, states:

"The current test for the admission of scientific evidence was established in 1923 in *Frye v. United States. Frye* requires that scientific evidence be 'sufficiently established to have gained general acceptance in the particular field in which it belongs.' California, has adopted this standard, noting that its major advantage lies in the articulation of a conservative approach. Extensive periods of time generally intervene between scientific discoveries and their acceptance as evidence in court proceedings.

. . . .

"The argument that an acceptable inclusionary blood test for paternity must reach absolute certainty confuses the scientific with the legal definition of fact. Presently, paternity cannot be proven to a degree of absolute certainty, but the standard of proof required in a paternity action is preponderance of the evidence. The degree of certainty generated by the HL-A paternity test (eighty-seven percent of all inclusionary tests result in a percent probability of paternity of ninety percent or greater) strongly indicates that HL-A paternity testing provides relevant evidence to be weighed by the fact finder along with all other evidence in the case." Sterlek & Jacobson, *Paternity Testing with the Human Leukocyte Antigen System: A Medicolegal Breakthrough,* 20 Santa Clara L. Rev. 511, 525-26 (1980).

In Seider, *Who Is the Father? HLA Testing Provides a Sure Answer to This Question - If Courts Would Only Listen,* 3 Family Advocate 13, 14 (Fall 1980), the author concludes:

"The divergence of opinion throughout the United States on the use of the H.L.A. test is manifest. However, one factor appears undisputed: the reliability of the test as an indication of parentage is high. Its effectiveness has been endorsed by the American Medical Association and the Section on Family Law of the American Bar Association.

"Although not perfect, findings of paternity based on objective, scientific data, such as that provided by the H.L.A. test, far outweigh those based on subjective, frequently incomplete and uncorroborated testimony.

"As has been well noted, 'considering the interests at stake and the costs of an erroneous decision—to the parties, to society, to the integrity of the legal system—the question of paternity should be dealt with empirically, as a question of genetics.' "

Since HLA testing is a relatively new test insofar as its use in the courtroom is concerned, it has been dealt with by only a few appellate courts. Several courts have refused to admit the test to show *probability of paternity.* In so doing, however, these courts have in general acknowledged the test as reliable but nevertheless rejected the evidence under specific statutes which limit admissibility of blood tests results to those which *exclude* the alleged father. *Winston v. Robinson & State,* 270 Ark. 996, 606 S.W.2d 757 (1980); *Cardenas v. Chavez,* 103 Mich. App. 646, 303 N.W.2d 3 (1980); *J.B. v. A.F.,* 92 Wis.2d 696, 285 N.W.2d 880 (1979). The statutes involved in these cases were enacted with reference to blood tests based on red blood cell groupings which, in accordance with the state of medical knowledge at the time, was the test commonly employed and which was accepted only as a reliable test to *exclude* paternity.

Where there has been no limiting statute, however, those courts which have dealt with the question have unanimously approved the HLA test as reliable and probative. *Cramer v. Morrison,* 88

Cal. App. 3d 873, 153 Cal. Rptr. 865 (1979); *Carlyon v. Weeks,* 387 So.2d 465 (Fla. Dist. Ct. App. 1980); *Com. v. Blazo,* 10 Mass. App. Ct. 324, 406 N.E.2d 1323 (1980); *Malvasi v. Malvasi,* 167 N.J. Super. 513, 401 A.2d 279 (1979); *Phillips By & Through Utah, Etc. v. Jackson,* 615 P.2d 1228 (Utah 1980).

K.S.A. 23-131, which provides for the use of blood tests in paternity cases, does not limit the use of such test results to those which exclude the alleged father.

In sum, our review of the reported cases and recent literature convinces us that HLA tests to determine paternity are generally accepted in the scientific community as reliable. We hold that the results of such tests are admissible in evidence in they otherwise meet relevant legal standards for the admissibility of such tests.

In determining whether the test results meet other relevant legal standards, the court must consider other factors, such as (1) the qualifications of the necessary witnesses, (2) the actual procedures employed in the test, (3) whether proper procedures and materials were used in the particular test, and (4) the effect of variables and other factors, if any, that might tend to affect the accuracy of the test.

In the present case, Dr. Cross' credentials as an expert in histocompatibility testing were impressive. He is a professor at the University of Kansas School of Medicine, director of the Midwest Organ Bank, and has written approximately one hundred articles in medical journals. He testified about the HLA test used and its acceptance in the scientific community as a reliable test for paternity. He then explained how the tests were performed, including safeguards for errors, the comparison of antigens found in the blood cells, and how the comparisons were used to determine paternity. The end result was a paternity index and a plausibility of paternity. Dr. Cross used the formula from the American Association of Blood Banks for calculating the probability that defendant was the actual father as compared to a random man selected from the population as a whole. In this case, the tests showed a plausibility of paternity in defendant of 99.96%. Based on these results, he gave as his opinion that defendant was the father of the plaintiff.

Dr. Cross was subjected to vigorous cross-examination by defendant's counsel, and our review of the record shows that the

laboratory procedures and statistical analysis involved were carefully performed.

Defendant complains particularly about the random man sample used in the statistical calculation. Dr. Cross testified, however, that the sample values are published in many medical journals, are widely accepted in medicine, and that the use of the random man factor is inherent in the HLA paternity test.

In conclusion, we hold that the trial court did not err in admitting into evidence the testimony of Dr. Cross and his opinion, based upon HLA tests, that defendant was the father of the plaintiff.

Affirmed.