Betty CALLISON, Appellee,

v.

Gene CALLISON, Appellant.

No. 55890.

Supreme Court of Oklahoma.

March 13, 1984.

Rehearing Denied Sept. 18, 1984.

Opala, J., concurred in part and dissented in part with an opinion in which Simms, V.C.J., concurred.

Simms, V.C.J., dissented with an opinion in which Opala, J., joined.

Jack E. Gordon, Jr., Claremore, for appellee.

John M. Crockett, Pryor, for appellant.

HODGES, Justice.

The dispositive issues on appeal are whether: 1) the three-year statute of limitations prescribed by 10 O.S.1981 § 83 [1] is

---

1. The rights of illegitimate children to obtain support from their natural father is governed by 10 O.S.1981 § 83, which provided:

"The father of a child who is born out of wedlock is liable for the support and education of the child to the same extent as the father of a child born in wedlock. An action to enforce this obligation to support and educate the child may be brought by the mother or guardian of the child, by the public authority chargeable with the support of the child, or by the child. An action to determine paternity and to enforce this obligation may be brought within three (3) years after the birth of the child or within three (3) years from the time that the person charged with being the child's father last contributed to his support or education. If paternity has been judicially determined or if the father has acknowledged in writing that he is the father of the child, an action to enforce this obligation may be brought any time before the child reaches majority, but liability may be imposed for only the proceeding three (3) years. The father's obligation to support is terminated if the child is adopted. The court may order the payments made to the mother or guardian of the

applicable to a paternity proceeding initiated pursuant to 12 O.S.1981 § 1277.2;[2] 2) trial courts have jurisdiction to determine paternity under § 1277.2; and 3) if blood tests conducted by HLA (Human Leukocyte Antigen) Tissue Typing are admissible.

Betty Callison (appellee) and Gene Callison (appellant) were married May 22, 1972, and divorced October 22, 1972. The parties continued to maintain a relationship. On October 5, 1979, Betty again filed for divorce, alleging that a common-law marriage had been established, and that a child was born during the marriage on June 14, 1974. Betty requested custody of the child and child support. Gene denied the existence of any type of marital relationship, and denied that he was the father of the child.

At trial, after the conclusion of the evidence on the issue of a common-law marriage, Betty abandoned her attempt to prove the marriage, and asked that the court determine whether Gene was the father of the child. Despite Gene's objection, the trial court held that it had jurisdiction to resolve the issue of paternity pursuant to 12 O.S.1981 § 1277.2, and at Betty's request, ordered that blood tests be conducted by the HLA Tissue Typing Laboratory at the University of California. After the report had been received, a hearing was held on Gene's motion to dismiss on the basis that the paternity determination was barred by the statute of limitations, 10 O.S.1981 § 83. The court took the motion under advisement, and apparently overruled the motion because subsequently a

full hearing was conducted on the paternity issue.

Although Gene objected, the court admitted the results of the tests. The HLA report stated Gene could not be excluded as the father of the child, and the probability that he fathered the child was 94.37%. The court found the HLA test results, and other supportive evidence, including the fact that Gene and the child each have webbed toes, sufficient to establish paternity. Gene was ordered to pay child support and Betty's attorney's fees.

On appeal, Gene contends that: the court lacked jurisdiction to determine paternity under 12 O.S.1981 § 1277.2; the three-year statute of limitations, 10 O.S.1981 § 83, had run; the Court of Appeals erred when it found that he had waived the defense of the statute of limitations; and that HLA test results were inadmissible.

I

The district court had jurisdiction to determine paternity pursuant to 12 O.S.1981 § 1277.2. We are aware that the Court of Appeals in *DuVall v. DuVall*, 543 P.2d 766, 768 (Okl.App.1975) held that if the trial court, during a divorce proceeding, found that a marriage did not exist between the parties, the court lacked jurisdiction to order child support. However, this problem was corrected by the legislative enactment of 12 O.S.Supp.1976 § 1277.2; and it was recognized by this Court in *State ex rel. Bailey v. Powers*, 566 P.2d 454, 456 (Okl.1977)[3] that § 1277.2 governs such situations.

---

child, or to some other person, corporation or agency to administer under the supervision of the court."

**2.** It is provided by 12 O.S.1981 § 1277.2:

"In an action for a divorce, legal separation or annulment where there are children born to the parties, the court may determine if the parties to the action are the parents of the children, although the court finds that the parties are not married; and if the parties to the action are the parents of the children, the court may determine which party should have custody of said children, and it may award child support to the parent to whom it awards custody, and make an

appropriate order for payment of costs and attorney's fees."

**3.** In *State ex rel. Bailey v. Powers*, 566 P.2d 454, 456 (Okl.1977) the prosecutrix had instituted a paternity action to procure child support. She admitted under oath that she had a common-law marriage with the putative father. The court ruled that although her proper forum was in the divorce court, 12 O.S.1981 § 1277.2 was designed to take care of this particular situation. This Court said:

"The Legislature has recently enacted a statute to provide for the situation which is presented to us. Although it was not effective at the time

## II, III

The only question presented and decided concerning 10 O.S.1981 § 83, the Oklahoma three-year statute of limitations pertaining to the liability of the father of an illegitimate child to support and educate the child, is whether it is unconstitutional insofar as it relates to the time in which to bring an action to determine paternity. Because we find that the three-year limitation period results in a denial of equal protection of the laws, the issue of whether Gene had waived the defense of the statute of limitations is immaterial.

■ The guarantee of equal protection of the law is a pledge of the protection of equal laws. Although exact equality is not a prerequisite of equal protection, classifications which are invidiously discriminatory are forbidden.[4] Invidious discrimination is defined as a classification which is arbitrary, irrational and unrelated to a legitimate state purpose.[5] Equal protection requires that: the classification rest on real and not feigned differences; the distinction have some relevance to the purpose for which the classification is made; and the different treatments are not so disparate relative to the difference in classification as to be completely arbitrary.[6]

■ A classification based on illegitimacy is unconstitutional unless it has an evident and substantial relationship to a legitimate state interest.[7] A state may not erect an impenetrable barrier to invidiously discriminate against illegitimate children by denying them substantial benefits generally accorded all children. After a state establishes a judicially enforceable right by minor children to support from the natural father, there is not a constitutionally sufficient justification to deny support merely because the child's natural father has not married its natural mother.[8] The imposition of a three-year period within which a paternity suit must be brought restricts the right of some illegitimate children to paternal support in a way that the identical right of legitimate children is not restricted.[9] The time for asserting the right to support must be long enough to permit those who normally have an interest in illegitimate children to bring an action on their behalf, despite inhibitions caused by difficult personal, family, and financial circumstances which may accompany the birth of the child.[10]

We now have federal precedent for striking as unconstitutional a one-year and a two-year statute of limitations in paternity proceedings. The Texas one-year limita-

of trial, it would govern any further disposition of this matter."

4. *Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886).

5. *Norvell v. Illinois,* 373 U.S. 420, 423, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456 (1963).

6. *McLaughlin v. Florida,* 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964).

7. *United States v. Clark,* 445 U.S. 23, 27, 100 S.Ct. 895, 899, 63 L.Ed.2d 171, 177 (1980).

8. *Gomez v. Perez,* 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973).

9. *Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983).

10. In *Mills v. Habluetzel,* 456 U.S. 91, 100, 102 S.Ct. 1549, 1555, 71 L.Ed.2d 770, 778 (1982) the United States Supreme Court said:
  "It requires little experience to appreciate the obstacles to such suits that confront unwed mothers during the child's first year. Financial difficulties caused by child-birth expenses or a birth-related loss of income, continuing affection for the child's father, a desire to avoid disapproval of family and community, or the emotional strain and confusion that often attend the birth of an illegitimate child all encumber a mother's filing of a paternity suit within twelve months of birth. Even if the mother seeks public financial assistance and assigns the child's support claim to the State, it is not improbable that twelve months would elapse without the filing of a claim. Several months could pass before a mother finds the need to seek such assistance, takes steps to obtain it, and is willing to join the State in litigation against the natural father. A sense of the inadequacy of this one-year period is accentuated by a realization that failure to file within twelve months 'results in illegitimates being forever barred from the right to sue their natural father for child support,' *In the Interest of Miller,* 605 S.W.2d [332] at 334 [ (Tex.Civ.App.1980) ], while legitimate children may seek such support at any time until the age of eighteen."

tion period barring paternity suits brought on behalf of illegitimate children more than one year after their birth was held to violate equal protection of the laws in *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982). In *Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983) the United States Supreme Court held that the Tennessee two-year statute of limitation which precluded paternity proceedings after two years was also an unconstitutional denial of equal protection of the law to some illegitimate children. The length of time provided by the statute is not decisive. Based on the rationale of *Mills* and *Pickett,* we can see no distinction between the Texas and Tennessee statutes and 10 O.S.1981 § 83. Each suffers from the same unconstitutional infirmity.

■ The state's interest in the litigation of stale claims is undermined by the countervailing state interest in ensuring that genuine claims for child support are satisfied.[11] The three-year limitation period does not provide some illegitimate children with an adequate opportunity to obtain support; and is not substantially related to the legitimate state interest in preventing the litigation of stale or fraudulent claims. Whether any existing statute of limitations is applicable is not an issue in this case, and the answer must await another day.

**11.** This interest stems from a desire to reduce the number of individuals forced to enter the welfare rolls. See *Mills v. Habluetzel,* note 10.

**12.** See Terasaki, "Resolution By HLA Testing Of 1000 Paternity Cases Not Resolved By ABO Testing," 16 J. Fam. L. 543 (1977-1978). See also *Pickett v. Brown,* supra, note 9.
In *Little v. Streater,* 452 U.S. 1, 7, 101 S.Ct. 2202, 2206, 68 L.Ed.2d 627, 633 (1981) the Court quoted with approval from S. Schatkin, Disputed Paternity Proceedings § 9.13 (1975):
"As far as the accuracy, reliability, dependability—even infallibility—of the test are concerned, there is no longer any controversy. The result of the test is universally accepted by distinguished scientific and medical authority. There is, in fact, no living authority of repute, medical or legal, who may be cited adversely.... [T]here is now ... practically universal

## IV

The relationship between a statute of limitation and the state's interest in preventing litigation of stale paternity claims has become attenuated as scientific advances in blood testing have alleviated the problems of proof surrounding paternity actions.[12] This has reduced the possibility that a defendant will be falsely accused of being the illegitimate child's father. Gene asserts that HLA test results were improperly admitted because a proper foundation was not laid for their admissibility. He also alleges that the Oklahoma Uniform Act On Blood Tests To Determine Paternity,[13] 10 O.S.1981 § 504, prohibits admission of the HLA results.[14] We do not agree.

### A.

■ The Legislature did not intend to preclude the courts of this state from the benefits of technical advances made subsequent to the enactment of § 504. Oklahoma's Uniform Act On Blood Tests does not prohibit the admission of HLA test results. The Legislative intent of the Oklahoma Evidence Code is to ascertain the truth and justly determine proceedings.[15] The trier of fact generally has little to aid in the determination of truth in a paternity action. The intimate acts from which a paternity action arises are seldom known to anyone else and the self-serving testimony of a party is of questionable reliability.[16]

and unanimous judicial willingness to give decisive and controlling evidentiary weight to a blood test exclusion of paternity."

**13.** See 10 O.S.1981 §§ 501–508.

**14.** 10 O.S.1981 § 504 provides:
"If the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the test, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. Evidence showing the 'possibility' of paternity shall be inadmissible and the question of paternity shall be resolved on the basis of other evidence taken before the court."

**15.** See 12 O.S.1981 § 2102.

**16.** *Little v. Streater,* note 12, supra.

The HLA test[17] is a recent development whose trustworthiness is generally accepted by the scientific community.[18] It is capable of establishing either that an individual could not be the father of a certain child, or that the probability that he is the father exceeds 90%. The admission of scientific proof with such a high degree of certainty as HLA tests provides relevant evidence[19] and aids the trier of fact in deciding the case. HLA test results should have been admitted as relevant evidence by the authority of 12 O.S.1981 §§ 2401 and 2402;[20] and as exceptions to the hearsay rule under 12 O.S.1981 §§ 2803(24) and 2804(5).

## B.

■ The contention that a proper foundation was not laid for the admissibility of the tests, or that the appellant did not have a fair opportunity to contest the taking of judicial notice of the test results is specious.

The issue of whether the court would take judicial notice of the results was discussed at the time the tests were ordered. Appellee's counsel contended that the court could take notice of the results, and the court responded, after noting that other pertinent factors would also be considered,[21] "If I order the tests I will probably look at them.[22] The tests were admitted for whatever probative value they might have. The appellant's counsel had done extensive discovery concerning the procedure, cost, and accuracy of the tests and he had discussed it, not only with the technicians at UCLA[23] but, with appellee's counsel "on occasion"[24] He requested that, if the tests were ordered, "the full battery of tests be completed." It was only after the results were obtained, which incriminated his client, that he challenged their medical trustworthiness. When the appellee's counsel stated that he had furnished the court with a procedure which was extremely accurate, it was not disputed.[25]

The Oklahoma Code on Evidence (Code), 12 O.S.1981 § 2203(B),[26] provides that a

---

17. HLA testing is based upon the chromosomal makeup of the test subjects. HLA testing identifies inherited genetic "markers" in the blood's white cells and yields strong positive evidence of plausibility of paternity. It permits a laboratory to match a child with its biological father in over 90% of the cases. The red cell blood tests most often used by laboratories until recently (and those previously excluded by § 504) were considered generally accurate to show that someone was not a child's father, but not accurate enough to prove that he was. Until the early 1970's, HLA testing was used predominately to determine donor-recipient compatibility in organ transplants and hereditary disease research. Now, it is revolutionizing determinations of the identity of a child's father in paternity cases. A. Castillo, "New Use Of Blood Test Is Decisive In Paternity Suits," N.Y. Times, June 2, 1981.

18. *Tice v. Richardson,* 7 Kan.App.2d 509, 644 P.2d 490, 493 (1982); *Cramer v. Morrison,* 153 Cal.Rptr. 865, 88 Cal.App.3d 873 (Ct.App.1979); *County of Fresno v. Superior Court of Fresno County,* 154 Cal.Rptr. 660, 92 Cal.App.3d 133 (Ct.App.1979).

19. Sterlek § Jacobson, "Paternity Testing With The Human Leukocyte Antigen System: A Medicolegal Breakthrough," 20 Santa Clara L.Rev. 511, 525–26 (1980).

20. It is provided by 12 O.S.1981 §§ 2401, 2402:
Section 2401.
" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
Section 2402.
"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, The Constitution of the State of Oklahoma, by statute or by this Code. Evidence which is not relevant is not admissible."

21. Tr. p. 89.

22. Tr. p. 90.

23. Tr. p. 91.

24. Tr. p. 90.

25. Tr. p. 89.

26. It is provided by 12 O.S.1981 § 2203:
"A. In determining the propriety of taking judicial notice of a matter:
"1. The court may consult and use any source of pertinent information, whether or not furnished by a party; and
"2. No exclusionary rule except a valid claim of privilege shall apply.

party is entitled upon timely request to be heard concerning the propriety of taking judicial notice and the scope of the matter noticed, and that in the absence of prior notification, the request may be made after notice is taken. At no time did the appellant object to the taking of judicial notice, nor did he request an opportunity to be heard on either the propriety or the matter noticed—he was on notice.

The cardinal rule of statutory construction is that the language of the statute should be considered to ascertain legislative intent. There is no room for construction or provision for further inquiry when the legislative intent is plainly expressed; nor may the court read into it exceptions not made by the legislature.[27] Appellant received every opportunity to challenge the taking of notice, and this Court cannot afford him more leniency than the statute permits.

### C.

▮▮ Insofar as accuracy was concerned, it was concluded by the court that UCLA was number one in the HLA polls.[28] At the motion for new trial, when appellant's counsel argued that no proper foundation had been laid for the admissibility of the tests, the court said, "... It was the understanding of the court that it was stipulated and agreed that the court would consider the test." This was not denied by appellant's counsel. His response was, "All right, your Honor."[29] The court may consult and use any source of pertinent information, and the HLA test is so widely acknowledged and recognized that its accuracy can be readily determined by sources whose accuracy cannot reasonably be questioned.[30]

Under the Code, the court had every right to take judicial notice of the accuracy of the tests, and the appellant waived any objection to the admission of the test results, or to the lack of a proper foundation, by failing to make a timely request to be heard on the propriety of taking judicial notice.

CERTIORARI GRANTED. OPINION OF THE COURT OF APPEALS VACATED. JUDGMENT OF THE TRIAL COURT AFFIRMED.

BARNES, C.J., and LAVENDER, DOOLIN, HARGRAVE and WILSON, JJ., concur.

OPALA, J., concurring in part, dissenting in part.

SIMMS, V.C.J., dissenting.

OPALA, Justice, concurring in part and dissenting in part:

Our review on certiorari addresses a disputed paternity suit. The Court of Appeals left undisturbed the trial court's decree against the putative father (defendant), and this court's opinion affirms that decision upon different grounds. It holds that (1) parentage, custody and support of an out-of-wedlock child may be litigated *dehors* the purview of a *public paternity proceeding*, 10 O.S.1981 §§ 71 et seq.,[1] in a *private*

---

"B. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the scope of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

"C. Judicial notice may be taken at any state of the proceeding.

**27.** *Hughes Drilling Co. v. Morgan,* 648 P.2d 32, 35 (Okl.1982); *Seventeen Hundred Peoria, Inc. v. City of Tulsa,* 422 P.2d 840 (Okl.1966).

**28.** Tr. p. 91.

**29.** Tr. p. 8.

**30.** See 12 O.S.1981 § 2203(A)(1), note 26, supra; and 12 O.S.1981 § 2202(B)(2) which provides: A judicially noticed adjudicative fact shall not be subject to reasonable dispute. It shall be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
See notes 12, 17 for scientific decisiveness of the test.

**1.** Before the enactment of 10 O.S.1981 § 1.1 in 1974, the filiation remedy created by 10 O.S. 1971 §§ 71 et seq. was called a "bastardy" proceeding, the same name as that given to it in the early English prototype known as the Poor Law Act. 18 Eliz. c. 3 [1576]; 1 Blackstone, Commentaries, ch. 16, 458; IV Holdsworth, A Histo-

*action* brought under the provisions of 12 O.S.1981 § 1277.2;[2] (2) the three-year statute of limitations, 10 O.S.1981 § 83,[3] determined to govern *all* paternity contests between unmarried parents, both public and private, violates the Equal Protection Clause of the XIVth Amendment to the Federal Constitution; and (3) there was no error in admitting the H.L.A.[4] test results. *I am not entirely in accord with the court's pronouncement.* I would reverse the filiation decree on these grounds: (1) the instant § 1277.2 suit was neither properly commenced nor prosecuted; (2) while the § 83 limitation period was correctly found in the trial court to have been tolled by support payments made within 3 years last preceding the institution of the contest, the results of the H.L.A. test should not have been admitted in evidence without an adequate foundation being first laid by expert testimony vouching the scientific reliability of the technique and the correctness of its application to the test performed in this case.

ry of English Law, 157. 1 Schatkin, Disputed Paternity Proceedings (4th.Ed.1983), § 10.5, pgs. 1–12–1–14. Until the passage of 12 O.S.1981 § 1277.2 in 1976, first noted by us in *State ex rel. Bailey v. Powers,* Okl., 566 P.2d 454, 456 [1977], the father's *statutory* duty to support his out-of-wedlock offspring was enforceable *only* in bastardy. *Anderson v. Fry,* Okl., 288 P.2d 1111, 1112 [1955]; cf. *State ex rel. Keithline v. Jennings,* Okl., 463 P.2d 690, 692 [1970]. Oklahoma follows the majority of Anglo-American jurisdictions in holding that the father's liability to support his out-of-wedlock child must be rested on statutory law. Annot.: Nonstatutory duty of father to support illegitimate child, 30 A.L.R. 1069–1073; See *Moncrief v. Ely,* 19 Wend. (N.Y.) 403, 405 [1838].

**2.** The provisions of 12 O.S.1981 § 1277.2 are:

"In an action for a divorce, legal separation or annulment where there are children born to the parties, the court *may determine if the parties to the action are the parents of the children, although the court finds the parties are not married;* and if the parties to the action are the parents of the children, the court may determine which party should have custody of said children, and it may award child support to the parent to whom it awards custody, and make an appropriate order for payment of costs and attorney's fees." [emphasis added]

**3.** The provisions of 10 O.S.1981 § 83 are:

I.

## CLAIMED ERROR IN ALLOWING THE PATERNITY SUIT TO BE COMMENCED AND PROSECUTED WITHOUT A WRITTEN PETITION

This suit was begun by the mother as a divorce action based on her alleged common-law union with the defendant. When her proof of marriage failed, she *orally withdrew* her prayer for divorce and *elected* to proceed for determination of the child's paternity, invoking the provisions of § 1277.2. The defendant objected—on due process grounds—to the mother's oral change of her claim for relief. He sought an order requiring her to file a paternity petition by which he would "be apprised of the facts upon which this case is based".[5] Because the court overruled the objection, allowing the mother to proceed under § 1277.2 without a written petition for paternity adjudication, the defendant now assigns this ruling as fundamentally erroneous. I agree.

"The father of a child who is born out of wedlock is liable for the support and education of the child to the same extent as the father of a child born in wedlock. An action to enforce this obligation to support and educate the child may be brought by the mother or guardian of the child, by the public authority chargeable with the support of the child, or by the child. An action to determine paternity and to enforce this obligation may be brought within three (3) years after the birth of the child or within *three (3) years from the time that the person charged with being the child's father last contributed to his support or education.* If paternity has been judicially determined or if the father has acknowledged in writing that he is the father of the child, an action to enforce this obligation may be brought any time before the child reaches majority, but liability may be imposed for only the preceding three (3) years. The father's obligation to support is terminated if the child is adopted. The court may order the payments made to the mother or guardian of the child, or to some other person, corporation or agency to administer under the supervision of the court." [emphasis added].

**4.** H.L.A. is an accepted acronym for a human leukocyte antigen inclusionary-type bio-chemical blood tissue test of the probability of paternity.

**5.** Transcript of Proceedings (TR) 95.

When the mother's claim for divorce failed for lack of a demonstrated marriage, her case came to an end. There was no longer any issue to be tried and nothing in evidence to which the pleadings could have been made to conform by some midtrial amendment.[6] Total failure of proof differs from variance. While the latter may be cured by an amendment that makes pleadings conformable to proof,[7] the former cannot.[8] Pleadings are required to be in writing. 12 O.S.1981 § 261.[9] Although under the provisions of § 1277.2 the case could proceed as a private paternity suit, the court, upon receiving the mother's announcement that she elected to press a filiation claim, should have required her to file a petition [10] that conformed to our Code of Civil Procedure.[11]

The defendant suffered serious prejudice from an absence of pleadings. He was deprived of the opportunity formally to (a) challenge the mother's claim either as untimely or otherwise legally insufficient; (b) to file defensive pleadings; and (c) to demand a jury in accordance with the provisions of 10 O.S.1981 § 76.[12] Unless waived, a trial by jury must be accorded *in every* § 1277.2 filiation proceeding. This is so because such right clearly is conferred by law in a *public* paternity proceeding under 10 O.S.1981 §§ 71 et seq. A disparate mode of trial for private and public paternity defendants would be violative of the Equal Protection Clause. The state cannot constitutionally dichotomize unwed putative fathers for a diverse treatment at trial. In short, the § 1277.2 filiation defendants cannot be validly excluded from the benefit of a jury trial.[13]

## II

### THE THREE-YEAR LIMITATION PERIOD IN 10 O.S.1981 § 83 WAS TOLLED BY SUPPORT PAYMENTS

I agree with the court that *private* and *public* paternity suits must be governed by the same limitation period. By the terms of 10 O.S.1981 § 83, a filiation proceeding may be filed "... within three (3) years from the time that the person charged with being the child's father last contributed to ... [its] support ..." According to the undisputed proof, the defendant in this case did, on February 15, 1979, pay $100.00 for the support of the child whose status is

6. *Winemiller v. Matthews,* 125 Okl. 219, 257 P. 291, 295 [1927].

7. The terms of 12 O.S.1981 § 317 provide in pertinent part:
"The court, may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, ... *[to] conform the pleading or proceeding to the facts proved ...*" [emphasis added]

8. *Wagoner v. Saunier,* Okl., 627 P.2d 428, 431 [1981]. The provisions of 12 O.S.1981 § 313, which deal explicitly with failure of proof, are: "When, however, the allegation of the *claim* or defense, to which the proof is directed, is *unproved,* not in some particular or particulars only, but *in its general scope* and meaning, it is *not* to be deemed a case of *variance* within the last two sections [Sections 311, 312 of this title], *but a failure of proof.*" [emphasis added]

9. The provisions of 12 O.S.1981 § 261 are:
"The pleadings are the *written* statements by the parties of the facts constituting their respective claims and defenses." [emphasis added]

10. The pertinent provisions of 12 O.S.1981 § 264 are:
"The petition must contain * * * Second. *A statement of the facts constituting the cause of action, in ordinary and concise language, and without repetion.* * * *" [emphasis added]

11. The terms of 12 O.S.1981 § 317 proivide in pertinent part:
"The court, may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, ... and *when any proceeding fails to conform, in any respect, to the provisions of this Code, the court may permit the same to be made conformable thereto by amendment.*" [emphasis added]

12. The provisions of 10 O.S.1981 § 76 are:
"Upon the defendant being brought before the court, if he deny the truth of the complaint, the issue to be tried shall be 'guilty' or 'not guilty', and shall be tried summarily before the court, *unless the defendant demand a trial by jury.*" [emphasis added]

13. *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 [1966]; *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 [1972]; *Wilson v. Foster,* Okl., 595 P.2d 1329, 1332–1333 [1979].

in contest.[14] The case was brought against him *October 5, 1979.*

Because the record clearly reflects that the § 1277.2 suit was timely brought, § 83 is needlessly condemned here as offending the Equal Protection Clause. In advance of strict necessity the judiciary will not pass upon the constitutionality of statutory law.[15]

## III

## THE H.L.A. TEST RESULTS SHOULD NOT HAVE BEEN ADMITTED WITHOUT A PROPER FOUNDATION

While I agree with the court that our statutory law does not bar the reception of H.L.A. test results, I am of the view that it was error to admit this evidence without any foundation in expert testimony vouch-ing both the reliability of the testing technique and the correctness of its application to the test performed in this case.[16] Because the defendant clearly refused to stipulate that the test was admissible [17] and did demand that its "medical worthiness" be "verified",[18] the test results were improperly received without the requisite predicate being laid.[19]

No foundational proof was offered by the mother's counsel. There is absolutely nothing before us to indicate what scientific facts, if any, the judge did notice before admitting the result of the test, or the source whence he derived his technical knowledge.[20] The record is barren of any evidence properly (1) identifying the exhibit that sets forth the test results and (2) explaining the accuracy of the technique that was used in reaching these results.[21]

**14.** The payment was made by check No. 780, drawn on the Lakeside Bank of Salina, Oklahoma. The check was marked "MEMO support for Brook (the child's name)." Plaintiff's Exhibit 2, TR–118.

**15.** When, as here, the relief to be dispensed clearly is affordable upon alternative grounds, consideration of constitutional infirmities is deemed precluded by a self-erected "prudential bar" of restraint. *I.N.S. v. Chadha,* ── U.S. ──, ──, 103 S.Ct. 2764, 2766, 77 L.Ed.2d 317, 335 [1983]. "The Court has frequently called attention to the 'great gravity and delicacy' of its function in passing upon the validity of an act of Congress ... *The Court will not 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'* Liverpool, N.Y. & P.S.S. Co. v. Emigration Commissioners, supra [113 U.S. 33, 5 S.Ct. 352, 28 L.Ed. 899]." *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)[emphasis added]. See also, *Schwartz v. Diehl,* Okl., 568 P.2d 280, 283 [1977] and *Dablemont v. State, Department of Public Safety,* Okl., 543 P.2d 563, 564 [1975].

**16.** If the court desired to take judicial knowledge, from the available literature, of the scientific community's general acceptance of the H.L.A. test, it should have given the defendant notice of its intention so to do and afforded him the opportunity to meet this issue. 12 O.S.1981 § 2203(B); *United States v. Lopez,* 328 F.Supp. 1077, 1085 (U.S.D.C.E.D.N.Y.1971). The same requirement of notice is applicable to proceedings before administrative agencies. Notice of scientific facts "within their specialized knowl-edge" may be taken by administrative tribunals in individual proceedings, but parties *must* be notified "of the material noticed ... and be afforded an opportunity to contest the material so noticed ..." 75 O.S.1981 § 310(4). The Evidence Code, 12 O.S.1981 § 2203(B), is in accord with this approach. Davis, Administrative Law Text [1973], 313. See Morgan, State and Federal Evidence [Fifth Ed. by Weinstein], 8 [1976].

**17.** TR–90.

**18.** TR–121–122.

**19.** *Yeager v. Farmer,* Okl., 549 P.2d 345 (1976); *Harris v. State,* Okl.Cr., 383 P.2d 39 (1963); *Looper v. State,* Okl.Cr., 381 P.2d 1018 (1963); *Raley v. State,* Okl.Cr., 479 P.2d 609 (1971); *Sartin v. State,* Okl.Cr., 610 P.2d 262 (1980); see *Frye v. United States,* 293 F. 1013 (U.S.C.A.D.C. 1923).

**20.** *United States v. Lopez,* supra note 16, at 1085, strongly counsels the judge to include in the record the scientific material noticed or make explicit reference to such material in his ruling.

**21.** One commentator suggests that if counsel desire to challenge the H.L.A. result which shows a plausibility or probability of actual paternity, he should be allowed to cross-examine as to the accuracy of the laboratory technique used and as to the competence of the serologist "to calculate the mathematical plausibility of paternity". 1 Schatkin, Disputed Paternity Proceedings (4th Ed.Rev.1983), Suppl., pg. 8–29—8–30.

I would reverse the private paternity decree under review for further proceedings not inconsistent with these views.

I am authorized to state that SIMMS, V.C.J., concurs in my views.

SIMMS, Vice Chief Justice, dissenting:

I join Justice Opala in his observation that the statute of limitations in this case was tolled by the act of payment for support for the child and it is therefore unnecessary to reach the issue of constitutionality of Oklahoma's three year statute. I further accede to his view that the blood test under consideration is inadmissible over objection absent the necessary evidentiary predicate being established as to the scientific reliability thereof.

Additionally, I believe the majority, having voided the three year limitation provisions in paternity actions, should have made the further determination as to whether or not Oklahoma has any other statute of limitations which would bar a belated action of this nature. Lawyers, litigants, and judges are provided no guidance in this direction other than that the three year statute is unconstitutional.

It is my belief that 12 O.S.1981, § 95(sixth) now applies and bars a paternity action five years after birth unless conduct by the putative father has affirmatively tolled the five year period. This provision of Sec. 95 reads: "An action for relief, not hereinbefore provided for, can only be brought within five (5) years after the cause of action shall have accrued."

I am authorized to state that Justice OPALA joins me in the views expressed herein.