239 P.3d 176 (2010)
2010 OK CIV APP 57
Joseph Bart SWEET, Appellant,
v.
STATE of Oklahoma ex rel. DEPARTMENT OF HUMAN SERVICES CHILD SUPPORT ENFORCEMENT, Appellee, and
Billy R. Kemp, Jr., Appellee, and
Vickie L. Cantrell, Custodial Parent.
No. 106,886. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.
Court of Civil Appeals of Oklahoma, Division No. 3.
March 12, 2010.
Certiorari Denied June 4, 2010.
*177 Luke Gaither, Henryetta, OK, for Appellant.
Lou Ann Moudy, Henryetta, OK, for Appellee, Billy R. Kemp, Jr.[1]
ROBERT DICK BELL, Vice-Chief Judge.
¶ 1 Joseph Bart Sweet, Appellant, appeals from the trial court's determination that he is the legal father of K.H.C., a minor child. For the reasons set forth below, we reverse.
¶ 2 In early March 2005, K.H.C. was born to Vickie Lynn Cantrell. Two or three days later, Sweet and Cantrell signed an Acknowledgment of Paternity (Form 209). The Oklahoma Department of Human Services (DHS) received the form on March 18, 2005. The form contained a notice that Sweet had the right to rescind the acknowledgment within sixty (60) days from the date of signing the form. Sweet was also listed as the child's father on a birth certificate issued by the Oklahoma Department of Health, Division of Vital Records, on March 16, 2005.
¶ 3 On his own and without Cantrell's knowledge, Sweet took the child for a paternity test on May 16, 2005. The test results he received four days later showed Sweet was not K.H.C.'s biological father. On May 25, 2005, Sweet telephoned DHS, which only days earlier had opened a day-care and medical services case regarding K.H.C. Sweet could not recall the nature of his conversation. DHS records from May 27, 2005, indicate the agency received the DNA test results that excluded Sweet as K.H.C.'s biological father. DHS closed its case against Sweet the same day. Over an objection, a veteran employee of DHS was permitted to testify that her agency considered the genetic test results as a rescission of Sweet's Form 209 paternity acknowledgment. Cantrell informed Sweet of the case closure and Sweet thereafter had no more involvement or relationship with K.H.C. Records also show the Division of Vital Statistics was apprised of Sweet's DNA test results in June 2005.
¶ 4 Cantrell later provided DHS with information regarding two other potential fathers of K.H.C. On April 16, 2007, DHS filed a child support enforcement action against Appellee, Billy R. Kemp, Jr., and ordered him to submit to genetic testing. The subsequent DNA test, performed and concluded in the summer of 2007, established that Kemp is K.H.C.'s biological father. In April 2008, Cantrell revealed to DHS that she and Sweet had signed a Form 209 in 2005,[2] and DHS had no record of any written rescission. Even though DHS had been provided with genetic test results that excluded Sweet as K.H.C.'s father three years earlier, had closed its case against Sweet in 2005, and had since been provided with evidence establishing that Kemp is K.H.C.'s biological father, DHS added Sweet as a third-party defendant in its action against Kemp.
*178 ¶ 5 Trial was conducted in October 2008. Relying on 10 O.S. Supp.2006 §§ 7700-307 and 7700-308, the trial court ruled Sweet failed to timely rescind his paternity acknowledgment or otherwise timely challenge his Form 209. Therefore, the trial court adjudicated Sweet as the legal father of K.H.C. From said judgment, Sweet appeals.
¶ 6 Section 7700-307(A)(1) provides in relevant part that "[a] signatory may sign a rescission of acknowledgment of paternity" within "[s]ixty (60) days after the effective date of the acknowledgment." Section 7700-308(A) generally provides that a signatory of a paternity acknowledgment has two years to commence a proceeding to challenge the acknowledgment, which may be based only on "fraud, duress, or material mistake of fact." In the present case, Sweet never formally executed a rescission of the Form 209. Notwithstanding, the DHS employee who testified at trial said her office considered Sweet's genetic test results as a rescission of Sweet's paternity acknowledgment. It is also undisputed that Sweet never commenced any formal proceeding to challenge his acknowledgment of paternity. As Sweet understandably argues, he had no reason to believe he needed to take any further action with respect to Cantrell's child after May 2005, when DHS was provided with the genetic test results proving Sweet was not K.H.C.'s father and the agency closed its case against Sweet.
¶ 7 In World Publ'n Co. v. Miller, 2001 OK 49, 32 P.3d 829, the Supreme Court reiterated:
Legislative intent controls statutory interpretation. Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each.... Statutes are interpreted to attain that purpose and end championing the broad public policy purposes underlying them.
Id. at ¶ 7, 32 P.3d at 832 (citations omitted). In State ex rel. Bailey v. Powers, 1977 OK 134, ¶ 6, 566 P.2d 454, 456, the Court held, "The sole purpose of the paternity statutes is to provide a judicial forum for a woman who has delivered a child out of wedlock." We believe the Uniform Parentage Act, 10 O.S. Supp.2006 § 7700-101 et seq., also has as its goals the establishment of the parent-child relationship and the provision of support for children born out of wedlock. With respect to §§ 7700-307 and 7700-308 specifically, the apparent aim of these statutes is to aid in the orderly administration of paternity proceedings by providing two different methods for disputing a paternity acknowledgment. Subsection 307 provides a direct way for an acknowledged father to repudiate his acknowledgment, while Subsection 308 furnishes a means for an acknowledged father to challenge his acknowledgment in an adversarial proceeding. Both subsections also have the underlying goal of providing notice to both the state and to the mother of the putative father's repudiation of, or challenge to, his previously signed acknowledgment of paternity.
¶ 8 Under the unique facts of the present case, we hold the trial court erred in adjudicating Sweet as the legal father of K.H.C. Sweet's genetic test results established he is not the biological father of the child, the results were provided to DHS when the child was 82 days old, DHS files show the agency received the test results and the files contain a notation that Sweet is not K.H.C.'s biological father. Furthermore, a DHS employee testified the test results were considered by her agency as a rescission of Sweet's Form 209 and DHS closed its case against Sweet. Relieving Sweet of the support obligations for the child of another man under these circumstances would not defeat any of the purposes of the paternity statutes. Neither Cantrell nor her child have been denied a judicial forum for determining the identity of K.H.C.'s father. Moreover, DHS has identified K.H.C.'s biological father through DNA testing and he is presently before the court, thus the statutory goals of establishing a parent-child relationship for K.H.C. and providing for the child's support are also protected.
¶ 9 Our conclusion is bolstered by 10 O.S. Supp.2006 § 7700-631 and 56 O.S. Supp.2007 § 238.6B (G). Section 7700-631(4) states that during paternity hearings and adjudications, "a man excluded as the father of a child by genetic testing shall be adjudicated *179 not to be the father of the child." Section 238.6B(G) provides in relevant part that if genetic testing conducted pursuant to DHS paternity and support proceedings "excludes a person from being a natural parent, the Department shall dismiss any pending court or administrative collection proceedings against the person." Sweet has been excluded and Kemp has been identifiedas the father of K.H.C. by genetic testing.
¶ 10 On the basis of the foregoing, we hold the trial court erred in adjudicating Sweet as the legal father of K.H.C. Accordingly, the judgment of the trial court is REVERSED.
JOPLIN, P.J., and MITCHELL, J., concur.
NOTES
[1] Although attorneys for Appellee Department of Human Services filed an entry of appearance, they did not submit an appellate brief.
[2] Cantrell previously indicated to DHS that no paternity acknowledgment had ever been executed.